GERHARD F. BECKHUSEN, Respondent, *v.* E. P. LAWSON COMPANY, Appellant.

First Department, February 16, 1960.

George S. Pickwick of counsel (George J. Conway, attorney), for appellant.

Harry Zeitlan of counsel (Bennett E. Aron with him on the brief; Katz, Samuelsohn & Sapir, attorneys), for respondent.

M. M. FRANK, J.   The defendant appeals from the judgment entered against it following a jury verdict rendered in favor of the plaintiff.   The action is in negligence.

On July 14, 1954, three fingers and part of the thumb of the plaintiff's right hand were severed while he was operating a paper-cutting machine owned by his employer Checkmaster, Inc., that had been manufactured by the defendant, E. P. Lawson Company.   The plaintiff had operated the paper-cutting machine for approximately four months before the date of the accident. The machine had been purchased by Checkmaster from Lawson in 1948 and thereafter was serviced by the latter from time to time.

On the trial, the plaintiff's prime contentions were that Lawson was negligent in that there was an inherent latent defect in the machine, not discoverable upon reasonable inspec-

tion, and that Lawson failed to give or post a warning to the users of the machine to alert them to the dangers in its use. However, on the argument of the appeal, the plaintiff apparently abandoned the latter contention, namely that the defendant's negligence, if any, was predicated on the failure to warn, but stated that he relied upon the claimed defective design of the apparatus in question as the actionable negligence attributable to the defendant.

The machine was designed to perform a single-cycle operation. By that we understand that after a batch of paper was placed on the waist-high platform or table of the device, a guillotine-type knife performed the cutting operation by descending from a point above the platform and slicing through the paper, and then returned to a safety position and stopped. The operator was required to manipulate two levers situated below the platform upon which the paper was placed. The lever on the left had to be lifted while the one on the right had to be pushed down. Both hands, therefore, were required for a single operation and neither could come into contact with the knife or with the platform upon which the paper rested. Thus when both hands were engaged in operating the levers, the blade would descend, cut the paper, and return to its fixed position. When the cycle was completed and the blade in the safety position, the operator was free to remove the paper. At approximately hip level, on the face of the perpendicular lower portion of the equipment, there were two access doors or plates which were intended to be opened only for necessary inspection, maintenance, and replacement of parts. Otherwise these doors were secured flush to the face of the machine. The left-hand door was held tight by a bolt screwed through a hole in the door and into a bracket attached to the frame of the machine.

On the day of the accident, the left access door opened. As a result it caused the left-hand lever to spring back while being manipulated by the plaintiff. That, in turn, interfered with the braking mechanism and prevented it from functioning properly. When the plaintiff sought to remove the cut paper, the knife descended and severed the fingers of his right hand. The record is barren of proof to establish whether the left access door was ajar because the anchor screw bolt had become detached from the locking device, or from some other cause. The only evidence bearing on the issue was that in October, 1953, approximately eight months prior to the accident, one of the defendant's maintenance employees had inspected the machine. It is suggested that during this examination the employee probably removed the bolt, opened the access doors, and then replaced it.

From that tenuous springboard the plaintiff further speculates that possibly the bolt had not been properly fastened. There is no dispute that in the course of the six years following the purchase of the machine, it was in constant use.

Contrariwise, the defendant justifiably reasons that normal wear and tear over so long a period of time may have caused malfunction of the equipment, either through deterioration, breakage, or because an employee of Checkmaster may have opened the access doors and then failed to fasten them properly. From the record one may fairly infer that the cutting machine had been operated without difficulty up to the time of the accident, requiring only occasional servicing. The evidence proffered by the plaintiff on the trial utterly fails to establish that the machine had any latent defects in its manufacture or design, nor does it establish any dangers of which a person, such as the plaintiff, exercising reasonable care and familiar with the customary use and operation of the machine, would be unaware.

To sustain the judgment, the plaintiff seeks to invoke the doctrine of a manufacturer's liability to third persons as enunciated in *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382), and recently reiterated in *Markel* v. *Spencer* (5 A D 2d 400, affd. 5 N Y 2d 958). In the latter case, liability was fastened upon the manufacturer of a new automobile, driven only 240 miles, which failed to stop as the brakes were applied because a fractured bolt caused a complete failure of the braking system. A short answer to the argument that the principle underlying *MacPherson* and *Markel* should be applied to the instant case is that there is a marked difference between the malfunction of a newly acquired machine with a latent defect, and the sudden failure, from some cause other than a defect in design or manufacture, of a machine which has operated satisfactorily for a long time.

We must distinguish between proof and the inferences to be drawn therefrom, and mere conjecture. The proof is that because of a loosened or missing screw bolt the door which interfered with the use of the lever was ajar, thereby causing the accident. It is pure speculation to assume that the bolt was missing and the access door open because of defective design. As Judge CARDOZO aptly stated in *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382, 389), "There must be knowledge of a danger, not merely possible but probable. It is *possible* to use almost anything in a way that will make it dangerous if defective." On the record, we can only conclude that if a defect developed in this machine it resulted from use or misuse rather than from defective design. In *Auld* v. *Sears Roebuck & Co.* (261 App.

Div. 918, affd. 288 N. Y. 515), the plaintiff purchased a washing machine that was used weekly for at least a year and a half to do the family wash, until the day the plaintiff's wife was injured because the wringer swung around suddenly and struck her as she was pulling a sheet through it. The action was based upon negligence in the manufacture of the machine and upon the failure to give warning of its inherently dangerous nature. The proof indicated that a pin which held the wringer in place gave way. It was found that through wear and use the end and the sides of the pin had become tapered and worn. The Appellate Division, in reversing a judgment for the plaintiff and dismissing the complaint, held, "There is no duty upon the manufacturer to furnish a machine that will not wear out. Common sense and every-day experience teaches us that machinery will wear out. The remedy remains in having the machine inspected periodically so that worn parts may be replaced." The court concluded that no liability attaches to the manufacturer under such circumstances.

As Judge FULD observed in *Campo* v. *Scofield* (301 N. Y. 468, 472), "We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof. Just as the manufacturer is under no obligation, in order to guard against injury resulting from deterioration, to furnish a machine that will not wear out * * * so he is under no duty to guard against injury from a patent peril or from a source manifestly dangerous. * * * To impose upon a manufacturer the duty of producing an accident-proof product may be a desirable aim, but no such obligation has been — or, in our view, may be — imposed by judicial decision."

A manufacturer should not be burdened with the responsibility of anticipating the misuse of a machine by any careless or incompetent person. An injury suffered through the misuse of a piece of equipment by such a person is neither a probable nor natural result of anything done or left undone by the manufacturer. (See Bohlen, Studies in the Law of Torts, p. 126.)

As hereinbefore stated the defendant inspected and repaired the cutting machine from time to time. This service was not performed under a contract to maintain the equipment in working order regularly. Rather, work was done only when ordered by the plaintiff's employer. The machine was inspected and serviced eight months prior to the accident. Thereafter it remained in the exclusive control of Checkmaster, and was operated by its employees with no apparent difficulty. The accident may well have been the result of normal wear and tear that caused the loosening of the screw bolt securing the access

doors. Certainly the proof does not support the plaintiff's contention that the accident occurred as the result of the misfeasance of the defendant in inspecting and servicing the machine.

While the point is not seriously pressed before us on this appeal, we are quite satisfied that the proof utterly fails to establish that any warning notice was required with respect to the danger inherent in permitting the access doors to remain open. Moreover, the record discloses that the plaintiff testified that he new that the left-hand door was not to be opened. The use of a screw bolt to keep the doors fastened to the face of the machine sufficiently indicates that they were not intended, in the exercise of ordinary care, to be left open.

Under the circumstances we find no basis for ascribing the plaintiff's injuries to any negligence of the defendant in the manufacture or the servicing of the cutting machine. The judgment should be reversed, on the law and on the facts, and the complaint dismissed, with costs to the defendant.

BREITEL, J. P., RABIN, McNALLY and STEVENS, JJ., concur.

Judgment unanimously reversed upon the law and upon the facts, with costs to the appellant, and the complaint dismissed and judgment is directed to be entered in favor of the defendant dismissing the complaint, with costs.