Harrist *v.* Spencer-Harris Tool Co., et al.

No. 42248          May 7, 1962          140 So. 2d 558

*W. A. Geisenberger, R. L. Netterville,* Natchez, for appellant.

*Laub, Adams, Forman & Truly,* Natchez, for appellees, Youngstown Sheet & Tool Company, Continental Supply Company and Continental Emsco Company.

*Berger, Callon & Zuccaro,* Natchez, for appellee, Spencer-Harris Machine and Tool Company, Inc.

RODGERS, J.

This is a products liability suit growing out of an accident, in which Harrell Harrist, an employee of Rowley Drilling Company received an injury alleged to have been caused by the faulty manufacture of an oil rig sold through a dealer to appellant's employer.

Appellant filed a bill in the Chancery Court of Adams County, Mississippi, against Spencer-Harris Tool Company, a Texas corporation, hereinafter called the "Manufacturer"; The Youngstown Sheet and Tool Company, an Ohio corporation, The Continental Supply Company, a Delaware corporation, subsidiary of the Ohio corporation, and the Continental Emsco Company, a division trade name of the Ohio corporation, all referred to in the bill of complaint under the trade name of Continental Emsco Company, and which will be referred to herein as "Dealer". Rowley Drilling Company and Stephen J. Rowley, President, were made defendants for the purpose of garnishment process on an attachment in chancery, and are hereinafter referred to as the "Employer."

The bill of complaint alleges that the Manufacturer was engaged in the business of "welding, designing, manufacturing, constructing, planning, engineering, selling and distributing oil well drilling derricks, drilling rigs, and well supplies", and that the Manufacturer sold a drilling rig mounted on a tandem rear axle trailer which could be moved across country highways with conventional truck tractor to the dealer who in turn sold it to appellant's employer.

It is alleged that the Manufacturer was negligent in planning, designing and manufacturing the drilling rig, particularly in constructing the platform by welding a two-inch angle iron to the steel mesh floor so as to permit a two-inch perpendicular iron flange at the edge of the platform. It is further charged that the Manufacturer constructed a set of steps designed to be used with the

oil rig, and to be attached to the platform by hooks made to fit over the upturned iron flange at the edge. The bill of complaint further charges that the steps were constructed so that the outer edge of the steps were lower than the inner edge, so that the steps slanted downward. The bill of complaint specifically charges negligence on the part of the Manufacturer in construction and unsafe design, being inherently dangerous to persons using the rig in the manner for which it was intended and for which it was sold, so as to render the product unsuitable; that it was the duty of the Manufacturer to design, construct, manufacture, and inspect and test the steps so as to render the product suitable; and that it was its duty to warn persons using the rig and steps of the defects and danger.

It is alleged that the defective and dangerous condition of the oil rig and steps was known, or should have been known, to the Dealer, that the Dealer knew, or from an inspection should have known, that the use of the steps and oil rig would likely cause injury to persons working on it, and that neither the Manufacturer nor Dealer warned the complainant of the dangerous condition of the steps and platform.

Appellant further alleges that the faulty construction of the oil rig and steps was a latent defect which would injure the employee-user, including employee-complainant. It is alleged that defendants, Manufacturer and Dealer, impliedly warranted to all users that the design and construction was safe for the use for which it was manufactured, and that the negligent manner in which the product was constructed and sold was a breach of warranty to the purchaser, employer Rowley Drilling Company and employee Harrell Harrist.

The bill of complaint charges that on the 14th day of October 1959, while employed by Rowley Drilling Company, appellant slipped upon the defective steps and fell all the way down, seriously and permanently in-

juring his back and body, and that said accident was the proximate result of defendant's negligence.

The Manufacturer and Dealer filed separate general demurrers to the original bill of complaint upon two grounds: (1) There is no equity on the face of the bill. (2) The bill fails to state a cause of action against these defendants. The Rowley Drilling Company filed an answer admitting that it owed the Manufacturer $2,-639.46.

The Chancellor entered an order sustaining the demurrers, and upon the refusal of complainant to plead further, a decree was rendered dismissing the cause of action, and from this decree, appellant has appealed to this Court.

Appellant presents two assignments of error, to wit: (1) The court erred in sustaining the demurrers to the bill of complaint, and (2) the decree of the lower court is contrary to law.

Appellant argues that this is a tort action based upon negligence of the Manufacturer for its failure to use due, ordinary and reasonable care in the construction of an oil rig to be sold to the public under an implied warranty that it had been properly designed and constructed; that it had been inspected, tested and impliedly warranted for safe use for the purpose for which it was constructed.

It is true that this is the general rule recognized by the great weight of authority insofar as implied warranty may be construed as growing out of a sales contract. See Brown v. Murphee, 31 Miss. 91; 12 Am. Jur., Contracts, Sec. 458, p. 1041; 38 Am. Jur., Negligence, Sec. 20, p. 661; 46 Am. Jur., Sales, Sec. 346, p. 529, Sec. 349, p. 534; Implied Warranties of Reasonable Fitness in Mississippi by Clyde E. Bracken, Jr., Mississippi Law Journal, Vol. 28, 1, p. 53 (1956).

There is a common-law rule, however, requiring that before an injured person may recover under an implied

warranty from the manufacturer or seller of the machine for an injury alleged to have been the result of faulty manufacturing, the injured party, in order to recover, must have been a party to the sales contract. This is the "Privity of contract rule." The rule has been relaxed to some extent by decisions which hold that where a machine constructed so as to be inherently dangerous, the rule does not apply. Moreover, the privity of contract concept is answered by proof that an injured person and defendant bore a personal relationship toward one another which was equivalent to privity. See Le Blanc v. Louisiana Coa Cola Bottling Co., Ltd., 60 So. 2d 873 (La. 1952) ; 65 C. J. S., Negligence, Sec. 100 (b) 621, (c) 629; Hursh's American Law of Products Liability, p. 519. Mississippi adopted the later legal concept in the case of Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305 (1927). In that case this Court held that although a bottle of coca-cola was a gift to the plaintiff from her companion, who was present with her at the retailer's where the beverage was purchased, this did not bar recovery on the ground of absence of privity of contract.

This Court has for many years consistently followed the common-law rule requiring plaintiff to come with the privity of contract rule. There are numerous decisions by this Court based upon negligence, requiring privity of contract. See: Ford Motor Company v. Myers, 151 Miss. 73, 117 So. 362; Pillars v. R. J. Reynolds Tobacco Co., 117 Miss. 490, 78 So. 365; W. T. Pate Auto Company v. W. J. Westbrook Elevator Co., 142 Miss. 419, 107 So. 552; Kilcrease v. Galtney Motor Co., 149 Miss. 703, 115 So. 193; Cone v. Virginia-Carolina Chemical Corporation, 178 Miss. 816, 174 So. 554; Rainwater v. Hattiesburg Coca-Cola Bottling Co., 131 Miss. 315, 95 So. 444; Curtiss Candy Company v. Johnson, 163 Miss. 426, 141 So. 762; Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305. This Court has also

rendered many decisions based on breach of implied warranty. See: Pease & Dwyer Company v. Somers Planting Co., 130 Miss. 147, 93 So. 673; Royal Feed & Milling Company v. Thorn, 142 Miss. 92, 107 So. 282; Kroger Grocery Company v. Lewelling, 165 Miss. 71, 145 So. 726; Dulaney v. Jones & Rogers, 100 Miss. 835, 57 So. 225; Jackson Coca Cola Bottling Company v. Chapman, 106 Miss. 864, 64 So. 791; Rainwater v. Hattiesburg Coca-Cola Bottling Co., 131 Miss. 315, 95 So. 444.

Appellant begins his argument by admitting the rule heretofore followed in this State, requiring privity of contract between the manufacturer and the injured complainant, but suggests that the rule should be changed. His argument is: "* * * The issue is, is this Court ready, willing and able to repudiate the old archaic doctrine as is advanced by the appellees; or, will the Court renounce its position as you indicated you would do when the issue would come before the Court on all fours in the dictum of your decision in Du Pont v. Ladner, supra."

This Court is keenly aware of dictum in the opinion in E. I. Du Pont de Nemours & Company v. Ladner, 221 Miss. 378, 73 So. 2d 249. We are also conscious of suggestion made in the decision of Justice Magruder in the case of Mason v. American Emery Wheel Works, 241 F. 2d 906. We have carefully reviewed the authorities on this subject, beginning with the opinion of Judge Cardozo in the case of MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916 F 696, Ann. Cas. 1916C 440; Winterbottom v. Wright, 10 M. & W. 109 (1842), 152 Eng. Reprint 402; Kalash v. Los Angeles Ladder Co., et al., 1 Cal. 2d 229, 34 P. 2d 481; Hursh's American Law of Products Liability, supra; Harper and James, The Law of Torts, pp. 1535-1541; Articles by Daniel E. Murry, Implied Warranty Against Latent Defects, Insurance Law Journal, August 1961, Vol. No. 463, p. 547; Product Liability

Cases by William J. Condon, Insurance Law Journal, March 1960, Vol. No. 446, p. 147; Anno. 79 A. L. R. 2d 437; Anno. 164 A. L. R. 593; Anno. 74 A. L. R. 615; Nishida v. E. I. Du Pont de Nemours & Co., 245 F. 2d 768; 65 C. J. S., Sec. 100, p. 618; Todd Shipyards Corporation v. United States, D. C. Me., 69 F. Supp. 609. We find, however, that it is not necessary to pass upon or disturb the former opinions of this Court in order to reach a decision in this case.

Assuming, arguendo, (but not deciding this point at this time), this Court may ultimately adopt the so-called modern concept that a person who has no contractual relations with a manufacturer may recover for injuries caused by negligence of the manufacturer, nevertheless, in this case, we would be required to affirm the trial court because the alleged defects are not considered to be latent or concealed. If we assume there were defects, we think they were apparent and obvious to a casual observer. One textwriter uses the following language: "The principle that a manufacturer or seller does not have the status of an insurer as respects product design is illustrated by the proposition that since it is patent that virtually any article, or whatever type or design is capable of producing injury when put to particular uses (or misuses), a manufacturer has no duty so to design his product as to render it wholly incapable of producing injury * * *" Hursh's American Law of Products Liability, Sec. 2:59, p. 240. See also Campo v. Scofield, 301 N. Y. 468, 95 N. E. 2d 802; Jamieson v. Woodward & Lothrop, 101 App. DC 32; Beckhusen v. Lawson Co., 9 App. Div. 2d 536, 196 NYS 2d 531; Yaun v. Allis-Chalmers Mfg. Co., 253 Wis. 558, 34 N. W. 2d 853; Hursh's American Law of Products Liability, Sec. 2:38, p. 176.

On the question of warranties under sales contracts, in 46 Am. Jur., Sales, Sec. 377, p. 557, it is said: "According to the majority view, a general warranty does

not extend to open and visible defects in the quality or condition of goods sold, although they are inconsistent with the warranty. As has been stated, an express warranty does not survive acceptance with knowledge of the defects. It has been stated that neither a general nor an implied warranty covers external and visible defects which are plain and obvious to the purchaser upon mere inspection with the eye. Thus, although a general warranty of soundness is in writing, parol or extrinsic evidence is nevertheless admissible to charge the buyer with knowledge of any particular defect." Sec. 378, p. 558, of the same text contains the following expression: "Thus, for a homely example, in the sale of a horse, the want of a tail or ear or limb is certainly excluded."

No duty rests upon a manufacturer or seller to warn a purchaser of a dangerous design which is obvious. If this were not true, a manufacturer could not design and sell a pocket knife, axe, planer or gun.

We are therefore of the opinion, and so hold, that the Chancellor was correct in sustaining the demurrers filed by the defendants, and entering the decree dismissing the original bill of complaint. The decree of the Chancery Court dismissing the original bill is therefore affirmed.

Affirmed.

*Lee, P. J.,* and *Arrington, Ethridge* and *McElroy, JJ.,* concur.