**Percy LENOIR, Plaintiff-Appellant,**

v.

**C. O. PORTER MACHINERY COMPANY and Buss Automation, Inc., Defendants-Appellees.**

No. 80–3670.

United States Court of Appeals,
Fifth Circuit.*
Unit A

April 15, 1982.

Rehearing Denied May 20, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

James N. Compton, Biloxi, Miss., for plaintiff-appellant.

Sumrall & Thaxton, Anthony L. Thaxton, Laurel, Miss., for defendants-appellees.

Kenneth E. Bullock, Laurel, Miss., for Buss Automation, Inc.

Before BROWN and GOLDBERG, Circuit Judges.**

JOHN R. BROWN, Circuit Judge:

This tort action was brought by Percy Lenoir against C. O. Porter Machinery Co. (Porter), Buss Automation, Inc. (Buss), and several other defendants who were voluntarily dismissed prior to trial. Lenoir lost his left hand and forearm when his arm was caught in a planer ("Surfacemaster") manufactured by Porter. Buss manufactured the conveyor leading into the planer and designed the layout of the woodworking area where the accident occurred. At the conclusion of Lenoir's case at trial, which based liability upon strict liability in tort, implied warranty, and negligence, the District Court granted a directed verdict in favor of Buss on all issues, and a directed verdict to Porter as to strict liability and implied warranty. The negligence issue was submitted to the jury, and a verdict was returned for Porter. Lenoir's motion for a new trial was denied. Under the standard enunciated in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc), we find that the directed verdict in favor of Porter on the issue of strict liability in tort was improper, and thus we reverse and remand on that issue. As to Porter's ordinary negligence, an issue tried by the jury, we find reversible error in the District Court's instructions to the jury, and thus reverse and remand. The directed verdict in favor of Porter on the issue of implied warranty is not questioned in this appeal, and we affirm. Lenoir also appeals from several evidentiary rulings by the District Court. Some of Lenoir's claims merit our attention, and will be discussed, but these issues are not dispositive because we reverse and remand the jury verdict on the basis of confusing jury instructions.

As to Buss, under the standard in *Boeing, supra*, we find that the directed verdict on the issue of strict liability in tort was improper, and we reverse and remand on that issue. Likewise, we find that the directed verdict in favor of Buss on the issue of ordinary negligence was improper, and we reverse and remand. Finally, we affirm the directed verdict in favor of Buss on the warranty claim since this ruling is not questioned on appeal by Lenoir.

## Background

This unfortunate accident occurred when Lenoir, an employee of Tylertown Wood

** Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision.

The case is being decided by a quorum. 28 U.S.C. § 46(d).

Products Plant in Mississippi, caught his glove on a board on the conveyor belt of a wood planer, which resulted in his hand going into the front of the planer. The damages that Lenoir established at trial are not at issue here. Briefly, he was standing several feet away from the planer, facing the conveyor belt, pushing away the boards that were stacked up in front of him on their way to the planer. When a board caught the side of his glove and pulled it toward the planer, Lenoir attempted to free the glove by stepping "downstream," toward the planer, and was allegedly pulled into the planer by the pin mechanism which propelled the boards through the planer. At trial, it was argued that the planing machine sold by Porter as well as the conveyor system designed and partially manufactured by Buss [1] were unreasonably dangerous and therefore defective. In reply to the defendants' observation that a "limit bar", which acted as a safety device, had been removed by Lenoir's employer, Lenoir argued that the limit bar was not a safety device, and added that without side shields a hazardous condition persisted with or without the limit bar. Even if it was characterized as a safety device, it was allegedly inadequate. Lenoir's expert witness at trial suggested that, in addition to the design defects, there was a failure to warn on the part of the manufacturer of the planer.

### The Porter "Surfacemaster"

The Surfacemaster Facing Planer is one type of woodworking machine manufactured by Porter and sold throughout the United States. When Lenoir's employer purchased the planer, it was placed in the plant about 26 feet from the cutoff saw area, such that boards traveled on a conveyor from the cutoff saw area to and through the planer onto another conveyor. The planer was conveyor-fed and required no operator to run the machine. The planer was designed in 1948 and, with the exception of minor modifications, has remained the same operational product to the present day.[2]

The planer itself is approximately five feet high, eight feet long, and four feet wide. Rough boards, up to eight inches thick, are leveled in the planer—boards of approximately two to three inches thick were being run on the day of the accident. The planer came equipped with a limit bar located on the front just above the infeed area, extending outward 10½ inches over the conveyor, and 45 inches wide (extending from side to side of the planer). According to Porter, the principal functions of the limit bar were (i) to limit accessibility into the infeed area by sweeping off boards piled on top of the board to be leveled, and (ii) to turn off automatically the planer if boards thicker than intended were on the conveyor, or if two boards were wedged on the conveyor.[3] This limit bar had been removed by Lenoir's employer before the day of the accident.

When a board traveling on the conveyor reached the infeed table, feeder teeth came in contact with the board and moved it down the table across a high speed cutter head which leveled the bottom of the board. The feeder teeth assembly consisted of a number of rotating bars with spring loaded pins or teeth staggered on them. The pins

1. Buss argues that it did not sell a product and is not subject to strict liability standards. Moreover, Buss points out, even if its activities as a designer are subject to strict liability in tort standards, that liability cannot be established because of the material and substantial alterations and modifications of the planer as well as the conveyor belt system. According to Buss, a variable speed motor on the conveyor system that it approved had been changed so that the conveyor belt was set at a fixed speed.

2. Porter's vice-president, when called as an adverse witness, stated that there were no warning signs on the planer at the time it was manufactured, and no safety features were added to the planer from its introduction in 1948 through at least 1970. Lenoir's injuries occurred in 1976.

3. Porter's vice-president testified that the automatic cut-off switch activated by the limit bar, as well as the emergency stop button on the planer, operated to turn the machine off, but the feeder teeth device that injured Lenoir would continue to operate for another 10 to 15 seconds.

held the boards in place and forced them across the cutter head. These teeth were enclosed on all sides, and were located about 12 inches inside the infeed entrance.

The arrangement of the conveyors made it expedient for a person to work at the point where boards were dropped onto the conveyor leading directly into the planer to unscramble the boards, turn the "cup" of the board down, and spread the boards across the width of the conveyor for even wear of the cutter head.[4]

Porter maintains on appeal that the machine is not inherently dangerous when used for its intended purpose. Moreover, it argues, the infeed limit bar obviated the need to have someone near the planer feeding boards into it, and removal of the limit bar substantially changed the character of the machine. Any dangers associated with the use of the planer, the argument continues, were open and obvious to anyone working nearby. Porter concludes that because no credible evidence existed that the planer was defective or was in the same condition at the time of the accident as when it left the hands of Porter, the planer was not the cause of the accident.

### Directed Verdict as to Porter

In *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), this Court set the standard for review of a directed verdict:

> On motion for directed verdict ... the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is

substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

The first major issue on this appeal is whether the District Court erred in granting the directed verdict for Porter with regard to its strict liability in tort.

To establish his cause of action, Lenoir had to prove that he was injured from a defect in a product that rendered it unreasonably dangerous, and that the defect existed when the product left the manufacturer. *Price v. Admiral Corp.*, 527 F.2d 412, 414 (5th Cir. 1976), *citing Early-Gary, Inc. v. Walters*, 294 So.2d 181 (Miss.1974).

There is no question that Porter manufactured the planer, and the only modification made by Lenoir's employer was the removal of the limit bar. Lenoir's expert witness, Mr. Rennell, felt that the accident would have happened even with the limit bar attached. Lenoir argues that this issue should have gone to the jury. *See Smith v. Hobart Manufacturing Co.*, 302 F.2d 570, 575–76 (3d Cir. 1962) (new trial granted because trial court refused to allow evidence as to whether the accident would have happened even if a safety guard had not been removed). The defect identified by Mr. Rennell was the lack of side shields that would have prevented this accident. In addition, Lenoir alleges inadequate warnings with regard to the dangers of the machine.

Porter points out that the limit bar was permanently affixed to the planer and was not designed to be removed. It is maintained that the bar was a safety device that would turn the machine off if a board too large or if two wedged boards came under-

---

**4.** Porter's vice-president, in a deposition, testified that the system, as it was designed by Buss, was not completely safe because of the right angle turn in the conveyor belts that required a person on the conveyor system to unscramble the boards and spread them across

the width of cutting area. On further questioning, he stated that such a design was not "proper". Finally, he stated that the turn created a "problem." At trial, however, he stated that he did not recognize any "dangers" in the system.

neath the limit bar.[5] The limit bar, as well as the electrical cutoff wiring, were removed by a hacksaw or torch. In light of Porter's argument that the planer was conveyor-fed and required no operator to be present, it is difficult to imagine that the limit bar was designed for the safety of an operator. However, greater attention must be given to Porter's argument that when the limit bar was removed it became necessary to have a worker next to the conveyor belt to sort and unscramble the boards. Because of this substantial alteration, Porter argues that the product was not in the same condition at the time of the accident as it was when it left the manufacturer. *Price*, 527 F.2d at 414. This missing element, it is urged, is sufficient to establish that Lenoir did not meet his burden under the Mississippi law of strict tort liability. *Baker v. Ford Motor Co.*, 317 So.2d 51, 52 (Miss.1975).

Mr. Rennell provided the only evidence in the record that the planer was unreasonably dangerous. His conclusion was based upon the fact that the planer lacked an effective safeguarding system consisting of warnings and sideguards. Porter first points out that Rennell had never seen the planer in operation. In addition, Porter argues that Rennell ignored the testimony of Lenoir as to where his hand entered the infeed area of the planer. Rennell concluded that the machine was defective because it was possible to reach the feeder teeth by reaching under the limit bar from the side and upward into the feeder teeth. Porter, in reply, claimed that it would take a deliberate act on the part of an operator to

injure himself if the limit bar was present.[6] Thus, according to Porter, no testimony was presented to establish a defect *as to the facts in the present case.* Because Rennell's testimony related to facts not present in this dispute, namely the intent to injure oneself, we are asked to disregard that testimony in our assessment of the directed verdict in favor of Porter.

A manufacturer does not have a duty to design its product such that it is wholly incapable of producing injury. *Harrist v. Spencer-Harris Tool Co.*, 244 Miss. 84, 94, 140 So.2d 558, 561 (1962). Moreover, no "duty rests upon a manufacturer or seller to warn a purchaser of a dangerous design which is obvious." [7] 244 Miss. at 95, 140 So.2d at 562. Testimony by Lenoir indicated that, although he did not understand precisely how the machine worked, he did know that the planer contained moving parts and he would never have voluntarily placed his hand into the infeed area.[8]

Finally, Porter maintains that *even if* a defect had been established by Lenoir as to the planer, that defect had nothing to do with Lenoir's accident. That is, the planer did nothing to cause him to accidentally catch his hand on a board. The boards were coming on the conveyor faster than he was able to handle them, and he was attempting to push boards off onto the floor on the other side of the conveyor. This situation, according to Porter, constitutes an "intervening cause", *i.e.*, the failure of Lenoir's employer to furnish him with a safe place to work and sufficient co-workers. Because these intervening circumstances were not foreseeable to Porter ex-

---

5. At trial, Porter's vice-president testified that the limit bar was a safety feature.

6. Porter's vice-president testified that, in his opinion, Lenoir would not have suffered his injury if the limit bar had been in place. However, he also conceded that the limit bar does not offer protection to a person's hand or arm when the person approaches from the side of the planer.

7. One of Lenoir's co-workers testified that the machine was particularly dangerous, and that dangers associated with the machine would be obvious to one working in the area.

8. Lenoir testified that he was standing several feet from the planer when his glove was caught on a board. Although he did not understand the workings of the machine, he tried to free his hand by stepping toward the planer. He testified that he did not know how to turn off the planer, that he did not look for the switch that would turn off the planer before beginning work, and that if he had known about the pins or teeth inside the planer, he would not have been working in that area.

cept as a misuse of the product, it is urged that no cause of action was established under Mississippi law. *Landrum v. Massey-Ferguson, Inc.*, 473 F.2d 543, 544 (5th Cir. 1973).

■ Two issues remain to be resolved by this Court. First, we must ask if Lenoir's expert presented sufficient evidence to raise a question of fact regarding whether the design of the machine without side shields or warnings made the machine unreasonably dangerous to a person working near the conveyor belt. Second, we must consider whether the expert testimony presented by Lenoir, that the accident would have happened even if the limit bar had been in place, has any factual or engineering support.[9] We find, after a careful review of the record in this case, that sufficient testimony was presented for reasonable men to reach the conclusion, in the light of and with all reasonable inferences favorable to Lenoir, that the planer was defectively designed. In addition, we find that sufficient testimony was presented to raise the issue whether it would be possible for Lenoir's hand to enter the planer even with the limit bar present. As to Porter's theory of "intervening cause", this too presents a factual question to be answered by the trier of fact. *Gordon v. Niagara Machine and Tool Works*, 574 F.2d 1182, 1192 (5th Cir. 1978). We therefore reverse the trial judge's directed verdict in favor of Porter and remand the issue of strict liability for a new trial.

### The Directed Verdict as to Buss

Under the standards outlined above, we next consider the directed verdict in favor of Buss, who designed the layout where the planer was to be located as part of a "materials flow system." Buss contends that because no malfunction in the system has been shown, it has no liability for the accident. Lenoir urges that a jury could find that the design and manufacture of the entire conveyor system, between the cutoff saws and the planer, was defective. The design of the system required that a man be in the area where Lenoir was working, according to both Mr. Rennell and the vice-president of the defendant Porter. A 90-degree angle turn between the two conveyors caused the boards from the saws to pile up on one side of the conveyor leading to the planer. Lenoir thus argues that sufficient evidence was presented to the jury, that is, evidence that reasonable men might accept, to establish a defect. *See Pust v. Union Supply Co.*, 38 Colo.App. 435, 561 P.2d 355, 361 (1977).

Buss takes the position that it is not a manufacturer or seller of a product that could give rise to strict liability in tort. On the contrary, Buss claims that it merely rendered architectural design *services*.[10] In

---

**9.** Rennell, who was introduced as an expert safety engineer, testified that the limit bar was not a safety device. It might have, according to his testimony, offered some protection to the operator, if it prevented entry from the side. Even with sideguards, however, if the limit bar was moved up (as when boards of greater thickness were being planed), it would still be possible for an operator to reach the pins from the front of the planer.

Moreover, Rennell testified, if a machine remains dangerous after the maximum safeguards have been designed and provided, then it becomes important to have warning signs. He stated on cross-examination that any safeguard attached to the machine would have to be identified as a safety device so that it would not be removed or so that the employer would realize that in removing it he was exposing his employees to danger.

Rennell's theory at trial was that the limit bar did not necessarily block the front entrance of the machine because it would be possible for a worker's arm, flat on the conveyor belt yet bent at the elbow resting on the edge of the conveyor, to move along the side of the limit bar for the full 10 inches and still enter the front of the planer. While this theory does not *appear* to be relevant to the facts in this case, it is relevant as to the defense by Porter that the limit bar would have prevented Lenoir's injury. If the presence of the limit bar would have made little difference to the operation of the machine and its potential dangers, then, according to Lenoir, the machine was not substantially altered by the removal of the limit bar.

**10.** California courts have refused to extend strict tort liability to a supplier of engineering services. *Swett v. Gribaldo, Jones & Associates*, 40 Cal.App. 573, 115 Cal.Rptr. 99 (1974); *Gagne v. Bertran*, 43 Cal.2d 481, 275 P.2d 15, 21 (1954). A professional engineer is usually

addition, Buss argues that no evidence was presented by Lenoir to suggest that the design of the layout was improper, dangerous, or unusual in similar businesses. Buss characterizes its activities as architectural and engineering services which do not give rise to strict liability in tort. *See LaRossa v. Scientific Design Co.*, 402 F.2d 937 (3d Cir. 1968); *City of Mounds View v. Wali Jarvi*, 263 N.W.2d 420 (Minn.1978).

It is also argued that both the planer and the conveyor belt leading into the planer were substantially changed by the removal of both the limit bar and the variable speed motor on the conveyor. These changes were unforeseeable, according to Buss, and thus amounted to intervening proximate causes of Lenoir's injuries. *See State Stove Manufacturing Co. v. Hodges*, 189 So.2d 113, 123 (Miss.1966), *cert. denied*, 386 U.S. 912, 86 S.Ct. 860, 17 L.Ed.2d 784 (1967). Moreover, Buss asserts, any dangers associated with the operation of the planer were open and obvious, thus no duty to warn existed.

Lenoir, on this appeal, states that the contention by Buss that strict liability is not applicable was never raised affirmatively in either the pleadings or motions made by Buss. Lenoir contends that Buss has waived any defense to the strict liability action. In addition, Lenoir agrees that pure "services" are not "products" within the meaning of RESTATEMENT OF TORTS 2d § 402A (1965), but argues that Buss' design of the conveyor system which lead to the planer *interacted* with the design of the planer.

■ We find that Lenoir presented evidence, about which reasonable men could differ, that the entire system designed by Buss, consisting of conveyors manufactured by Buss and the planer manufactured by

Porter, was unreasonably dangerous. A question of fact necessarily arises as to whether Lenoir's accident was caused, at least in part, by an unreasonably dangerous system set up and partially manufactured by Buss in full contemplation of the use of the Porter planer. Whether Buss is a consultant *or* a manufacturer with regard to the cause of Lenoir's injury is not clear in the present case, thus we cannot simply apply the doctrine that mere consultants are not subject to strict liability in tort. As to the substantial changes made in the conveyor/planer system, those issues are sufficiently raised to be decided by the trier of fact. Many of the arguments set forth by Buss, and Porter as well, are addressed to the issues of credibility of witnesses, which are also matters for the jury.

■ The District Court also granted a directed verdict in favor of Buss on the issue of ordinary negligence. Even assuming that Buss is not subject to strict liability standards, Lenoir points out that the duty to exercise ordinary skill and competence, under negligence standards, remains as a basis for liability.[11] Testimony was presented on behalf of Lenoir that the injury was foreseeable because the design of the conveyor system required a worker to stand next to the conveyor and unscramble the boards. Because sufficient evidence was presented at trial relating to Buss' duty of care, and because a fact issue as to Buss' negligence was raised by the evidence, we find that the directed verdict in favor of Buss on ordinary negligence was improper and requires remand. *Boeing*, 411 F.2d at 374.

*Jury Instructions*

Having considered the directed verdicts as to Porter and Buss on strict liability, as

---

not liable in the absence of negligence or intentional misconduct. Buss characterizes itself as the furnisher of a layout drawing and supervisor of installation of machinery to conform to the drawing, even though it did manufacture and sell the conveyor belts.

11. This argument as to Buss' liability under negligence standards was first raised in the

reply brief of Lenoir, apparently as an afterthought. New issues ordinarily cannot be raised by a reply brief, but in light of the opportunities for oral argument given these parties, and the evidence presented at trial as to Buss' possible negligence, we find that this issue has been raised on appeal for our review.

well as the directed verdict for Buss on the issue of ordinary negligence, we come now the claim that was presented to the jury, namely Porter's liability for ordinary negligence. Lenoir asserts that the District Court erred in allowing Porter to present certain evidence and in its instructions to the jury.

First, Lenoir contends that some of the jury instructions were confusing and misleading because they related to strict liability in tort, which, because of the directed verdict, was no longer at issue. Although the theories of strict liability and negligent design are closely related, we must look carefully at the instructions as a whole to determine whether they were clear and accurate so as to be understood and applied by jurors of ordinary intelligence. *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1289–90 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974).

■ A careful examination of the instructions given to the jury reveals several confusing aspects. The jury was told that a manufacturer has a duty to give a warning as to "dangers inherent or reasonably foreseeable in the use of such goods." Then, it was explained that if the jury should find that the design and manufacture of the planer was reasonably safe for its intended and foreseeable use when it was sold, they must return a verdict for Porter. Next, the burden on Lenoir was to prove not only that he was injured, but that the planer was defective and unreasonably dangerous when it was sold. Again, the jury was instructed that they should find for Porter if the design of the planer was reasonable and safe for its intended purpose. Then, after several other instructions, the jury was instructed that as a matter of law the planer was not unreasonably or inherently dangerous when originally manufactured and sold. Although this instruction was consistent with the trial court's erroneous directed verdict on the strict liability issue,

it could only serve to confuse the jury after they had been asked to find from a preponderance of the evidence whether the planer was reasonably safe for its intended use when it was sold. Their sworn duty, the judge explained in the instructions, was to return a verdict for Porter if they found the planer safe for its intended purpose. Although a linguistic philosopher might be able, after careful analysis, to reconcile and distinguish between the jury's duty to assess the safety and reasonableness of the planer's design and the legal imperative that the planer was not unreasonably or inherently dangerous, we find that the jury instructions, "viewed as a whole," were unclear and confusing. *Reyes*, 498 F.2d at 1289–90.

### Evidentiary Admissions

Porter and Buss introduced into evidence a citation issued to Lenoir's employer by OSHA. Because no reference was made in the citation to any dangerous conditions around the conveyor/planer system, this evidence was probably introduced to show that the plant was safe—otherwise the citation supposedly would have specified deficiencies in the planer. Lenoir argues that this report was inadmissible because it cannot be taken into account as evidence of negligence. *Otto v. Specialities, Inc.*, 386 F.Supp. 1240, 1245 (N.D.Miss.1974). In addition, Lenoir argues that the introduction of this document was secured by means of hearsay testimony.

■ Lenoir did not object when this document was offered and received into evidence. Thus our standard of review of its admission is whether plain error or a manifest miscarriage of justice was committed. *Morreale v. Downing*, 630 F.2d 286, 290 (5th Cir. 1980). On the basis of *Otto, supra*, 386 F.Supp. at 1244–45, we find that error was committed in allowing the OSHA document to be produced on the issue of negligence,[12] but that the error is harmless

12. The Court in *Otto* believed that:
[The] Supreme Court of Mississippi would be persuaded ... to refuse to permit the utilization of OSHA safety standards ... either as

conclusive proof or evidence of negligence....
386 F.Supp. at 1245.

in light of the slight probative value of a document that did not mention the planer as safe or unsafe.

Next, it is pointed out that Buss attempted to question Lenoir as to workmen's compensation payments. An objection was sustained, but the motion for mistrial was denied. In light of Lenoir's later presentation of the benefits received from workmen's compensation, any error caused by Buss' mention of benefits was either cured or harmless.

Finally, Lenoir argues that the admission of certain portions of the plaintiff's workmen's compensation file constituted reversible error. Lenoir urges that these documents represented hearsay. Because of our disposition of this case on the grounds of the jury instructions, we need not reach this issue on appeal.

### Conclusion

In summary, as to the directed verdict in favor of Porter on the issue of strict liability in tort, we reverse and remand for a new trial because, under *Boeing, supra*, a fact issue was raised for the jury. As to the judgment in favor of Porter, on the basis of the jury's verdict on the issue of ordinary negligence, we reverse and remand for a new trial because of erroneous jury instructions. Finally, we affirm the directed verdict in favor of Porter on the theory of implied warranty because this ruling was not challenged on appeal.

The directed verdict in favor of Buss on the theory of strict liability in tort and ordinary negligence is reversed and remanded because of our findings, under the standards set forth in *Boeing, supra*, that sufficient evidence was presented at trial to raise a fact issue as to Buss' liability on the basis of both strict liability and ordinary negligence. Finally, we affirm the directed verdict in favor of Buss on implied warranty because this ruling was not challenged on appeal by Lenoir.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.