Earnest M. GRAY, Jr. and Hughlene Gray, Plaintiffs-Appellees,

v.

The MANITOWOC COMPANY, INC., Defendant-Appellant.

No. 84–4528.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1985.

Riddick & Carpenter, B.L. Riddick, Robert M. Carpenter, Jackson, Miss., for defendant-appellant.

Nobles & Ferguson, James W. Nobles, Jr., Jackson, Miss., for plaintiffs-appellees.

Before RUBIN, WILLIAMS and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Earnest M. Gray brought this action for injuries which he sustained when he was struck by the boom of a construction crane manufactured by defendant, The Manitowoc Company, Inc. (Manitowoc). Gray's wife, Hughlene Gray, joined in this action seeking damages for loss of consortium and companionship. The Grays sought recovery under Mississippi law on theories of strict liability, implied warranty and negligence asserting that Gray's injuries were caused by a defect in the design of the crane and that Manitowoc had provided inadequate warnings of this defect. After the jury returned a verdict for the Grays, Manitowoc moved for judgment notwithstanding the verdict and for a new trial, asserting that the Grays failed to establish either the existence of a defect or a breach of a duty to warn. The district court denied Manitowoc's motion and entered judgment for the Grays. We conclude that the evidence was insufficient to establish that the crane possessed a latent hazard, as required by Mississippi law, for recovery on any of the theories of liability presented by the Grays and, therefore, reverse.

I.

Gray was struck in two separate incidents by the butt end of the boom of a Manitowoc 4100W crane while working as an ironworker foreman on a construction project near Port Gibson, Mississippi. These incidents occurred while Gray's crew was changing sections of the crane's boom and had placed the boom in a plane roughly parallel to the ground (the "boom down" position). Gray was standing on the left side of the crane, supervising this operation, as the crane operator swung the lowered boom in Gray's direction, striking Gray in the back.

Testimony at trial established that the operator's vision to the left side of the Manitowoc crane is obscured by the boom when the crane is operated in the "boom down" position. To compensate for the operator's incomplete field of vision, users of cranes such as the 4100W place a signal-man at various locations on the ground to guide the operator. This procedure was followed by Gray's employer during both incidents in which Gray alleged that he was struck. Gray contends, however, that Manitowoc should have provided mirrors, closed circuit television cameras or other devices to enable the operator to see to the left side of the crane when the crane is operated in the "boom down" position. Gray asserts that had these safety devices been placed on the crane, the crane operator would have seen Gray standing on the left side of the boom and would have avoided hitting him with the boom.

Manitowoc responds that even if mirrors or other devices would have permitted the operator to observe the area on the left side of the crane, the omission of these devices did not render the crane defective.

Manitowoc argues that the hazards of operating the crane in the boom down position were open and obvious to ordinary users of the crane and that Mississippi law does not permit recovery under any theory of products liability for a manufacturer's failure to correct such patent dangers.

## II.

Mississippi courts first spoke to the issue of patent product design hazards in *Harrist v. Spencer-Harris Tool Co.*, 244 Miss. 84, 140 So.2d 558 (Miss.1962), a product defect case brought on theories of negligence and implied warranty and decided prior to Mississippi's adoption of strict liability. In that case, the Mississippi Supreme Court was asked to reconsider its rule barring recovery on a plaintiff's claim where the plaintiff was not in privity with the defendant manufacturer. The court, however, found it unnecessary to disturb its former opinions, resolving the case instead on the ground that the product hazard was patent:

> Assuming, arguendo, (but not deciding the point at this time), this Court may ultimately adopt the so-called modern concept that a person who has no contractual relations with a manufacturer may recover for injuries caused by negligence of the manufacturer, nevertheless, in this case, *we would be required* to affirm the trial court because the alleged defects are not considered to be latent or concealed. If we assume there were defects, we think they were apparent and obvious to a casual observer.

*Id.* 140 So.2d at 561. (emphasis supplied). The court held that the patent nature of the hazard also precluded a finding for the plaintiff on his claim of failure to warn: "No duty rests upon a manufacturer or seller to warn a purchaser of a dangerous design which is obvious." *Id.* at 562.

We applied the reasoning of *Harrist* to a claim of negligent design in *Ward v. Ho-*

*bart Manufacturing Co.*, 450 F.2d 1176 (5th Cir.1971). Plaintiff Ward asserted that a meat grinder manufactured by the defendant was defectively designed because it failed to incorporate a safety feature. We determined that the grinder adequately performed its intended function of grinding meat. *Id.* at 1187. Relying in large part upon the open and obvious nature of the hazard, we reversed the district court's judgment for plaintiff, predicated upon a finding of negligence on the part of the manufacturer, and stated:

> The court in *Harrist* followed what appears to be the general rule in negligent design cases: where the alleged danger is open and obvious and the manufacturer has done everything necessary to insure that the machine will function properly for its designed purpose any duty owed to a future user has been fulfilled. (footnote omitted).

*Id.*, at 1180.

■ In *Jones v. Babst*, 323 So.2d 757 (Miss.1975), plaintiff sued a truck manufacturer for injuries which resulted when a wheel separated from a vehicle. The court found that the wheel separated as a result of abuse by a repairman rather than a manufacturing defect. *Id.* at 759. The Supreme Court of Mississippi, in dicta, however, reaffirmed its position that a manufacturer is not liable in negligence for a design hazard that is open and obvious. The court included the relevant portions of the above quote from *Ward.*[1] *Id.* We conclude that a manufacturer's liability for product defects under Mississippi's doctrines of negligence and implied warranty may not, as a matter of law, be premised on the existence of an obvious hazard in a product which functions properly for its intended purpose.

## III.

■ Under Mississippi's version of strict liability for hazardous products, man-

---

1. Although there is equivocal language in *Ward* to suggest that the obviousness of the danger is only one factor in determining the reasonableness of the design, considering the unequivocal language by the Mississippi Supreme Court in *Harrist* and *Jones,* we are persuaded the Mississippi Supreme Court would follow the clear language in its own cases.

ufacturers are not insurers of the products they produce; the existence of a product defect must be established before recovery may be obtained for a resulting injury. *Walton v. Chrysler Motor Corp.*, 229 So.2d 568, 572 (Miss.1969); *General Motors Corp. v. Howard*, 244 So.2d 726, 728 (Miss.1971). *See also Jones v. Babst*, 323 So.2d 757, 759 (Miss.1975). Mississippi has adopted the following formulation of the doctrine of strict liability for product defects (as it applies to manufacturers) from *The Restatement (Second) of the Law of Torts*, § 402A(1) (1965): "One who sells any product in a defective condition unreasonably dangerous to the consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property...." *Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506, 511 (5th Cir.1984), *reinstated en banc in relevant respects*, 750 F.2d 1314, 1317 (1985); *State Stove Manufacturing Co. v. Hodges*, 189 So.2d 113, 118 (Miss.1966), *cert. denied, sub nom. Yates v. Hodges*, 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967); *Ford Motor Co. v. Matthews*, 291 So.2d 169, 171 (Miss.1974).

Comment (g) to the Restatement § 402A defines the term "defective condition": "The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Comment (i), in turn, gives substance to the phrase "unreasonably dangerous":

> The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer.... The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowl-

edge common to the community as to its characteristics.

As these comments illustrate, the consumer expectation test of section 402A is rooted in the warranty remedies of contract law, and requires that harm and liability flow from a product characteristic that frustrates consumer expectations. *See* Keeton, *Product Liability and the Meaning of Defect*, 5 St. Mary's L.J. 30, 37 (1973).

In the seminal Mississippi case for strict liability for defective products, *State Stove*, 189 So.2d at 181, the Mississippi Supreme Court indicated that the patent danger bar adopted by the Restatement was incorporated into Mississippi's doctrine of strict liability. The court quoted the consumer expectation definition of defectiveness set forth in comment (g) to section 402A of the Restatement. In *Ford Motor Co.*, 291 So.2d 169, the Mississippi Supreme Court expounded on the concept of a product defect. The court quoted the relevant portions of comments (g) and (i) to the Restatement § 402A and also quoted the following passage from W. Prosser, *Handbook of the Law of Torts* § 99, at 659–60 (4th Ed.1971): "The prevailing interpretation of 'defective' is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety." [2] *Id.* The *State Stove* and *Ford* courts' commitment to the consumer contemplation test for product defects has not been undermined by any subsequent decision of the Mississippi Supreme Court, nor have we discovered any reported decisions in which Mississippi courts or we have permitted recovery in strict liability for a patently dangerous product design. *See Page v. Barko Hydraulics*, 673 F.2d 134, 137–39 (5th Cir.1982).

---

**2.** Dean Prosser expanded on the language quoted above. He explained that the existence of a requirement that a hazard disappoint the expectations of the ordinary consumer "is borne out by the cases of conditions 'natural' to food, such as a fish bone in a plate of chowder, or a cherry pit in cherry pie, which the ordinary consumer would expect to encounter, and against which

he would normally take his own precautions." Prosser, Section 99 at 660. Dean Prosser continued in a footnote: "It is not the fact that the defect is a natural one which is important, but the fact that the ordinary consumer would expect that he might encounter it." *Id.* at 660 n. 76.

We recognize that excluding patent hazards from the definition of a product design defect has been subject to much scholarly criticism,[3] and has been rejected in a number of jurisdictions.[4] Nonetheless, the patent danger bar was, until recent years, generally thought to be the prevailing rule in the various states [5] and, in the face of scholarly criticism, has been reaffirmed in a number of jurisdictions.[6] In the absence of any sign that this rule has been, or would be, rejected by the Mississippi Supreme Court, we are bound to apply it in this case. *See Wansor v. George Hantscho Co., Inc.*, 595 F.2d 218, 220–21 and n. 7 (5th Cir.1979). Hence, we conclude that the Grays' right to recover under the theory of strict liability depends upon whether the evidence was sufficient to permit the jury to find that the 4100W crane was "dangerous to an extent not contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics." *See Ford Motor Co.*, 291 So.2d at 169.

## IV.

█ We are persuaded that the record does not support a finding that the blind spot in the 4100W was a latent hazard.[7] The evidence was overwhelming that the existence of this blind spot was common knowledge in the construction industry. Gray's supervisor, testifying as Gray's witness, stated that the existence of a blind spot in the crane operator's field of vision had been widely discussed at the Grand Gulf job site. The business manager of Gray's union local, again testifying as Gray's witness, indicated that the left side of the 4100W crane was referred to as the "blind side". Indeed, the photographs and physical evidence introduced at trial plainly reveal that if a workman standing in the blind spot on the left side of the 4100W had attempted to look at the crane operator, he would have been unable to see him; the record suggests no reason why, in this circumstance, the workman should expect that the crane operator would be able to see him. Finally, uncontested evidence concerning the universal industry practice of using a signalman on the ground to guide operators of cranes clearly demonstrated a common awareness in the construction industry of both the limitation on the operator's field of vision inherent in the design of such cranes and the dangers posed by this limitation. Plaintiff adduced no evidence that manufacturers of other cranes of the vintage of the 4100W equipped them with mirrors, television cameras or other similar devices. Rather, the evidence showed that there was no

3. See, e.g., Darling, *The Patent Danger Rule: An Analysis and A Survey of its Vitality*, 29 Mercer L.Rev. 583 (1978); Marschall, *An Obvious Wrong Does Not Make a Right: Manufacturers' Liability for Patently Dangerous Products*, 48 N.Y.U.L.Rev. 1065 (1973); P. Keeton, Prosser and Keeton on The Law of Torts, § 99 at 698–99 (5th ed. 1984).

4. See e.g. *Knitz v. Minster Machine Co.*, 69 Ohio St.2d 460, 432 N.E.2d 814, 23 O.O.3d 403, *cert. denied sub nom., Cincinnati Milacron Chemical, Inc. v. Blankenship*, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982); *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1978); *Nichols ex rel. Nichols v. Union Underwear Co., Inc.*, 602 S.W.2d 429 (Ky.1980).

5. 1 R. Hursh & H. Bailey, *American Law of Products Liability 2d*, § 412 at 671, § 414 at 678 (2nd ed. 1974); Sherman, *Products Liability For the General Practitioner*, § 7:15 at 219 (1981). Cf. P. Sherman, *Products Liability For the General Practitioner*, § 7:15 at 58 (Supp.1984); Dar-

ling, *The Patent Danger Rule: An Analysis and A Survey of its Vitality*, 29 Mercer L.Rev. 583, 604–09 (1978).

6. *See, e.g., Delvaux v. Ford Motor Co.*, 764 F.2d 469 (7th Cir.1985) (Wisconsin law); *Young v. Tidecraft, Inc.*, 270 S.C. 453, 242 S.E.2d 671 (1978).

7. We review the district court's denial of Manitowoc's motion for judgment notwithstanding the verdict or a new trial under the familiar standard adopted in *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc): A motion for judgment notwithstanding the verdict should be granted only where the evidence, considered in the light and with all reasonable inferences most favorable to the party opposed to the motion, points so strongly and overwhelmingly in favor of the moving party that the court believes that a reasonable jury could not arrive at a contrary verdict. *See also Webb v. Rodgers Machinery Manufacturing Co.*, 750 F.2d 368, 371 (5th Cir.1985).

such industry custom of providing such devices. Industry custom therefore could not serve as a basis for a consumer to expect a crane manufacturer to furnish such devices.

Balanced against this evidence favorable to Manitowoc was Gray's testimony that he did not learn of the blind spot until after his second accident and the testimony of one inexperienced co-worker of Gray's that he also was unaware of the blindspot. Under the *Boeing* standard, we must, of course, credit this testimony. Nonetheless, both the Restatement's theory of strict liability and Mississippi's theories of negligence and implied warranty require an objective appraisal of the obviousness of a product hazard.[8] *See Restatement,* § 402A, comment (i) (the product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics"); *Harrist,* 140 So.2d at 561 (defects were "apparent and obvious to a casual observer"). Gray and his inexperienced co-worker's testimony concerning their subjective ignorance has little significance to this objective inquiry. In light of the overwhelming evidence indicating that the existence of a blind spot in the 4100W was common knowledge in the construction trade, we must conclude that the testimony of Gray and his inexperienced co-worker did not create a jury question as to the knowledge or expectations of the *ordinary* observer or consumer. We conclude that no reasonable jury could have found that the blind spot of the Manitowoc 4100W was not open and obvious, nor could any reasonable jury have concluded that the 4100W was dangerous to a degree not anticipated by the ordinary consumer of that product.

Since the Grays failed to establish that the Manitowoc 4100W crane was defectively designed under any proper theory of Mississippi law,[9] the district court erred in refusing to grant defendant's motion for judgment notwithstanding the verdict. We therefore

REVERSE and RENDER the judgment.

---

**8.** Gray's actual ignorance or awareness of the crane's blind spot hazard would be dispositive only if an assumption of risk issue were before us. *See Alexander v. Conveyors & Dumpers, Inc.,* 731 F.2d 1221, 1223–24 (5th Cir.1984).

**9.** With respect to the verdict on theories of negligence and implied warranty, no serious contention is made that Manitowoc might be

liable on the ground that the 4100W crane did not function properly for its intended purpose. Like the meatgrinder which adequately ground meat in *Ward,* it is not disputed that this crane adequately performed the construction tasks for which it was designed. *See Ward,* 450 F.2d at 1180.