Minnie **LLOYD**, Administratrix of the Estate of Gilbert Lloyd, Individually, and in Behalf of the Heirs at Law of Gilbert Lloyd, Sr., et al., Plaintiffs–Appellants,

v.

**JOHN DEERE COMPANY, et al.,** Defendants, Deere & Company, Defendant–Appellee.

No. 90–1242.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1991.

---

David L. Walker, Batesville, Miss., for plaintiffs-appellees.

W.O. Luckett, Jr., Michael T. Lewis, Luckett Law Firm, Clarksdale, Miss., for defendants-appellees.

Before RUBIN, SMITH, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

This appeal, concerning product liability claims, is from a Fed.R.Civ.P. 50(a) directed verdict in favor of John Deere Company. We AFFIRM.

## I.

In September 1987, Gilbert Lloyd, a resident of Mississippi, was killed while operating his Deere Model A tractor, which did not have a rollover protection structure. Mr. Lloyd's widow (Lloyd) brought this Mississippi wrongful death diversity action against Deere, alleging, *inter alia*, that Mr. Lloyd was killed when the tractor "rolled over or flipped over" on him; and that the tractor, designed and manufactured by Deere, was "defective and unreasonably dangerous" for two reasons: (1) improper design, including lack of rollover protection and improper weight distribution; and (2) lack of an adequate warning that the tractor could roll over, including when driven up inclines.

At the close of Deere's case, the district court granted it a directed verdict.[1] Lloyd timely appealed.

## II.

Lloyd contends that the district court erred by (1) granting the directed verdict; (2) excluding the testimony of Lloyd's expert on the adequacy of the warning; and (3) permitting Deere's expert to opine how

---

1. On denying Deere a directed verdict when Lloyd rested, the court stated it would consider a similar motion at the conclusion of the evidence.

the accident occurred. Lloyd seeks a new trial, at which the testimony in issue would be admitted and excluded respectively. Obviously, if the directed verdict was granted both correctly and independent of the two evidentiary rulings in issue, it is not necessary to reach them. Accordingly, we address first the directed verdict.

## A.

■■ The district court found that a reasonable jury could conclude only: (1) that there was no design defect; and (2) that the danger of rollover was open and obvious, relieving Deere of a duty to warn. In doing so, it applied the correct standard: a directed verdict is appropriate only if, after considering all the evidence and drawing all inferences therefrom in favor of the non-moving party, the court is convinced that no reasonable jury could find in favor of the non-movant. *E.g., Treadaway v. Societe Anonyme Louis–Dreyfus*, 894 F.2d 161, 164 (5th Cir.1990); *Melton v. Deere & Co.*, 887 F.2d 1241, 1243–44 (5th Cir.1989); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). We review such an award *de novo. E.g., Melton*, 887 F.2d at 1244.

No authority need be cited for the rule that for this diversity action, Mississippi's substantive law is applied. In Mississippi, Restatement (Second) of Torts § 402A is the starting point for strict liability actions.

*E.g., Hall v. Miss. Chem. Express, Inc.*, 528 So.2d 796, 799 (Miss.1988); *Toliver v. General Motors Corp.*, 482 So.2d 213, 215 (Miss.1985); *State Stove Mfg. Co. v. Hodges*, 189 So.2d 113 (Miss.1966), *cert. denied sub. nom, Yates v. Hodges*, 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967). That section provides in pertinent part:

> One who sells any product in a defective condition unreasonably dangerous to the user ... is subject to liability for physical harm thereby caused to the ultimate user ... if
>
> \*    \*    \*    \*    \*    \*
>
> (b) it is expected to and does reach the user ... without substantial change in the condition in which it is sold.

■■ Accordingly, to recover under the theory of strict liability, Lloyd "must show that the product was defective *and* that its defective condition made the product unreasonably dangerous to [Mr. Lloyd]." *Toliver*, 482 So.2d at 218 (emphasis by court).[2] A product is "unreasonably dangerous" if it is " 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.' " *Ford Motor Co. v. Matthews*, 291 So.2d 169, 172 (Miss.1974) (quoting § 402A, comment *i*); *Toliver*, 482 So.2d at 216; *see Melton*, 887

**2.** Of course, negligence and breach of warranty claims can also be included in a product liability action. *See, e.g., Gray v. Manitowoc Co.*, 771 F.2d 866, 867 (5th Cir.1985); *Brown v. Williams*, 504 So.2d 1188, 1189–92 (Miss.1987). (Needless to say, satisfying the standard for strict liability obviates proving negligence. *E.g., Hall*, 528 So.2d at 799; *Toliver*, 482 So.2d at 215.) Lloyd pled all three in her complaint (amended). She alleged in several instances that the tractor was "defective and unreasonably dangerous," and pled other § 402A elements, including that the tractor "was in a defective and unreasonably dangerous condition at the time it left the control of [Deere]," both language from, and critical factors for, § 402A strict liability. However, she alleged that this defective and unreasonably dangerous condition was caused by "negligent[ ] misdesign[ ]" and "negligent fail[ure] to warn," and that such "negligence" was the proximate cause of the injuries. And, she alleged that there was a breach of "implied warranties imposed by law" because of the de-

fective and unreasonably dangerous condition resulting from the "misdesign[ ] and ... [lack of an] adequate warning." The pretrial order had similar claims; but the testimony and argument by Lloyd's counsel in opposition to the motion for directed verdict were grounded in § 402A strict liability.

In any event, the standard Lloyd pled for all three bases for liability is that the tractor was "defective and unreasonably dangerous"—language directly from § 402A. The warranty claim (a form of strict liability, *see, e.g. Gray*, 771 F.2d at 869) is based only on implied warranty; accordingly, there was no proof offered for breach of an express warranty. And, other than design and form of warning evidence, there was no proof offered that might be grounds for liability based on negligence.

Therefore, while we have applied the standard for a directed verdict as to all three theories, or bases, for liability, and find it correctly granted for each, our analysis here is couched in the language of § 402A strict liability.

F.2d at 1243 and at 1246–48 (Reavley, J., dissenting).

The tractor had a tricycle configuration and was designed primarily for working row crops. At the time of the accident, Mr. Lloyd was using it for a logging operation (pulpwood); and logs were on the ground at the scene of the accident. In granting the directed verdict, the district court placed great emphasis on the following stipulation, as do we:

(2). At the time of the accident [Mr. Lloyd] was travelling in a direct line toward the top of a hill up an ... incline of approximately 30 degrees on sandy soil and the tractor rolled over backwards after encountering a log.

(3). The tractor involved in this accident was a Model "A" built by Deere ... prior to the year 1948 or 1949.

(4). ... [Mr.] Lloyd was an experienced farm tractor operator. He had utilized farm tractors both on his farm and in his logging business for twenty-seven years prior to the accident. In addition to the Deere tractor that he was using at the time of the accident, [Mr.] Lloyd owned another Deere tractor like the one involved in the accident. He had owned the tractor involved in the accident for approximately six months prior to the accident and he had owned the similar Deere tractor for approximately five years prior to the accident.

Additionally, he had owned other farm tractors for many years—namely Ford and two Farmall tractors. None of the tractors he had owned were built or equipped with roll-over devices or roll bars. [Mr.] Lloyd was an experienced mechanic and performed all maintenance and repair work on all of his tractors.

(5). At the time of the manufacture of the tractor a safety plate was attached to the tractor stating:

BE CAREFUL

1. Drive tractor at safe speeds.
2. Reduce speed when turning or applying individual brakes.
3. Drive slowly over rough ground.
4. Stop power shaft before dismounting from tractor.
5. Protect power shaft drive with master guard and shields.

1.

Concerning the design claim, numerous obvious factors must be considered in determining both whether the tractor was defective (because of its design) and whether that defect rendered the tractor unreasonably dangerous to Mr. Lloyd. For example, alternative designs and industry standards are "relevant to whether a product is reasonably fit or unreasonably dangerous...." *Hall,* 528 So.2d at 799.

> Conformity with established industry standards, while evidence of whether a product is reasonably safe, may never be conclusive on the point.... On the other hand, our law does not require that every manufacturer incorporate into his product every innovation which twenty-twenty hindsight suggests might have rendered the product more safe.... Our law demands that products be reasonably fit, not perfectly so.

*Id.* at 799–800. Other factors to consider on this appeal include whether the rollover danger (that a different design would allegedly have remedied) was open and obvious and, closely related to that factor, Mr. Lloyd's experience in operating tractors, especially the one in issue. *See, e.g., Brown v. Williams,* 504 So.2d 1188, 1190–92 (Miss.1987); *Harrist v. Spencer–Harris Tool Co.,* 244 Miss. 84, 95, 140 So.2d 558, 562 (1962).

As stipulated, Mr. Lloyd was an experienced tractor operator, including of the type involved in the accident. And, for this and other reasons discussed in the succeeding section on the failure to warn claim, the danger was open and obvious. Finally, as discussed below, the proof overwhelmingly showed both that the rollover protection structure urged by Lloyd was not developed until almost 20 years after the tractor was manufactured and that front end weights are not part of rollover protection.

Over objection, an expert witness for Lloyd, Dr. Ketchman, testified (by video-

tape deposition) that at the time of manufacture, Deere could have mounted a roll bar on the rear axle and could have installed weights at the front of the tractor that could have helped prevent a backward rollover. However, he did not perform any tests on a Model A to test his opinions.

On the other hand, two of Deere's experts, both of whom were involved in the development of rollover protection structures, testified that no feasible structures existed until the mid–1960s, almost 20 years after the tractor was manufactured. They also testified that the function of front end weights is not to prevent rollover and that they were never intended to serve that function. Furthermore, one of Deere's experts testified that the tractor's structure was not designed to accommodate a rollover device and would collapse in a rollover if one were affixed.

The district court found the evidence "overwhelmingly persuasive" that no feasible rollover protection structure existed in 1948 or 1949 when the tractor was manufactured; that Dr. Ketchman provided "[a]t best ... a scintilla of evidence that indicate[d] that it would have been reasonable and technically feasible at the time for John Deere to have put roll bars or front end weights on the tractor that would have prevented this unfortunate accident."

On crediting Dr. Ketchman's testimony and drawing all favorable inferences therefrom, as we are required to do, we find that Lloyd has failed to adduce sufficient evidence, including of a feasible alternative design, to withstand a directed verdict on the design claim. "A mere scintilla of evidence is insufficient to present a question for the jury"; rather, there "must be a conflict in substantial evidence to create a jury question." *Boeing,* 411 F.2d at 374–75. No such conflict is presented here. Accordingly, we hold that no reasonable jury could find for Lloyd on the design claim.

**3.** The district court excluded the deposition on the basis that "[a]n adequate warning is one

**2.**

■ Concerning the inadequate warning claim, the district court granted a directed verdict on the ground that the danger of rollover while operating the tractor under the circumstances existing at the time of the accident, including those stipulated, was open and obvious to someone with Mr. Lloyd's experience, obviating any duty to warn. As discussed, this factor is one of the elements to be considered in determining whether a product is defective, including because of its design. *See* comment *j* to § 402A. And, where the danger in issue (here, rollover) is open and obvious, no warning is required. *See Brown,* 504 So.2d at 1191–92; *Jones v. Babst,* 323 So.2d 757, 759 (Miss.1975) ("negligent design"); *Harrist,* 244 Miss. at 95, 140 So.2d at 562.

Mr. Lloyd had 27 years experience operating tractors. He was utilizing a tricycle configured agricultural tractor for logging and was travelling up a 30° incline in an area with logs strewn on the ground. No more need be said; we agree with the district court that "the evidence is overwhelming, that based on the experience of [Mr. Lloyd, when] ... driving this particular farm tractor at this particular place under the circumstance confronting him, the danger was open and obvious."

Accordingly, we hold that the district court did not err in granting a directed verdict on this issue.

**B.**

As discussed below, because the properly granted directed verdict was awarded on grounds independent from the two evidentiary rulings in issue, it is not necessary to reach them.

**1.**

Lloyd contends that the district court erred when it excluded the testimony of Lloyd's expert, Dr. Tanyzer, who was tendered (by videotape deposition) to testify that Deere had failed to place "signal words" in the warning plate on the tractor.[3]

reasonable under the circumstances," and that making that determination in this case "doesn't

Lloyd argues that had Tanyzer's testimony been admitted, the directed verdict could not have been granted. We disagree. The failure to warn claim is disposed of under the open and obvious defense; therefore, it is not necessary to determine whether the warning was adequate.

### 2.

Lloyd contends also that the district court erred in allowing Banks Brassel, tendered only as an expert in farm equipment operation, to render an opinion on how the accident occurred. In short, he testified that the accident happened when the tractor hit a log, lifting up its front end and resulting in the backward rollover. But, in any event, as quoted *supra*, the parties had stipulated that "[a]t the time of the accident [Mr. Lloyd] was travelling in a direct line toward the top of a hill ... up an incline of approximately 30 degrees on sandy soil and the tractor rolled over backwards after encountering a log." And, there was other uncontested expert testimony on how the accident occurred—what caused the rollover.[4]

It is not necessary to reach this issue. In light of the stipulation, and other uncontested evidence on how the accident occurred, the directed verdict was properly granted independent of Brassel's testimony.

### III.

Accordingly, the judgment is AFFIRMED.

present an issue which requires scientific, technical, or other specialized knowledge" which is "a condition or key to admissibility under [Fed. R.Evid.] 702," which provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise.

The admission of expert testimony is a matter left to the discretion of the trial court, subject to reversal only if "manifestly erroneous." *Smogor v. Enke*, 874 F.2d 295, 297 (5th Cir.1989).

4. Arguably, if there was error, it was harmless, because the admission of inadmissible evidence is harmless when, *inter alia*, it is pertinent to a fact already established by admissible evidence. *Liner v. J.B. Talley & Co.*, 618 F.2d 327, 329 (5th Cir.1980).