BARKSDALE, Circuit Judge:
At issue in this Mississippi diversity action is whether, under its products liability law, recovery against a product’s manufacturer by an injured non-user of that product (a bystander) is barred if the product defect or danger is open and obvious to an ordinary user, regardless of whether the bystander knew, or should have known, of the danger. Myron Batts was injured when a forklift operated by a co-employee backed into him. Batts sued the forklift manufacturer, claiming that the lack of any mirror or back-up warning device on the forklift rendered the manufacturer liable under the theories of negligence and strict liability in tort. A jury returned a verdict for the manufacturer, after being instructed that Batts, a bystander, could not recover under either theory if it found that the danger was open and obvious. For both theories of liability, this was a correct statement of the law; we AFFIRM.'
I.
Batts was employed in Mississippi by Flavorite Laboratories, Inc. His duties included operating a type forklift called .a “tugger”[2] in a room which was often noisy. In that room, at least one forklift operated in addition to Batts’ tugger. On the day Batts was injured in 1984, a co-employee, Charles Johnson, was operating a forklift manufactured in 1965 by Towmotor Corporation.[3] (Towmotor was purchased by Caterpillar.) The forklift was operated by a seated driver using controls to his front, as are the. lift forks, and is generally operated in reverse as often as forward. At the time of manufacture, Towmotor produced forklifts with load ca- *1388 pacifies ranging from 2,000 to 60,000 pounds. The forklift in issue had a 2,500-pound capacity and was designed for use in warehouses and other indoor areas. The forklift collided with Batts when Batts was backing, and walking beside, the tugger; and Johnson was operating the forklift in reverse, but without sounding its manual horn.
Although neither party contends that a back-up alarm sounded on the forklift before it hit Batts, whether any such device was then in place is disputed (as discussed in note 6, infra, concerning Caterpillar’s superseding proximate cause defense). After the accident, electrical alarms and flashing lights were installed on the forklifts at Flavorite. These items were available when the forklift was manufactured in 1965 and could be installed at customer request. However, they were not standard options on Towmotor forklifts of the capacity involved in this case. Indeed, no American manufacturer so offered them. Caterpillar’s witnesses opined that the need for back-up warning devices depends on the customer’s application and that their use is appropriate when an operator’s visibility is restricted.
At trial in 1991, Batts relied on claims of negligence and strict liability in tort;[4] but the jury, by special interrogatories, found for Caterpillar on both theories. Following the denial of his motion for JNOV or new .trial, Batts brought this appeal.
II.
Batts presented proof that the forklift should have had a back-up alarm, flashing warning lights, and/or rearview mirrors, and asserted that this failure entitled him to recover under either strict liability in tort (defective and unreasonably dangerous) or negligence (negligent design). On the other hand, Caterpillar presented evidence that there was no restriction on the forklift operator’s visibility to the rear and that there was a danger in an operator relying on alarms, lights, or mirrors, as opposed to looking in the direction of travel. One of its principal defenses was that the absence of such devices, and the concomitant danger of the operator not facing in the direction of travel, was open and obvious to the forklift owner and its employee operator (users) and that, under Mississippi law, this barred recovery by Batts.
Several of the jury instructions and a special interrogatory incorporated this open and obvious bar. (As discussed infra, the jury was instructed that Batts could not recover under negligence or strict liability in tort if the danger was open and obvious.) Batts’ challenge to those items is the primary thrust of his appeal. (In notes 5 and 6, we quickly dispose of the other issues raised by Batts [5] and Caterpillar (which did not cross-appeal)[6].)
*1389 In reviewing this challenge to jury instructions, “we view the [jury charge] as a whole in the context of the entire case. The judge must instruct the jurors fully and correctly on the law applicable to the case, including defensive theories raised by the evidence.” Crist v. Dickson Welding, Inc., 957 F.2d 1281, 1287 (5th Cir.1992). However, the district court is given broad discretion in formulating the charge and special interrogatories, and our review on appeal is deferential. Bradshaw v. Freightliner Corp., 937 F.2d 197, 200 (5th Cir.1991). “ ‘A judgment will be reversed only when the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.’ ” Hall v. State Farm Fire & Casualty Co., 937 F.2d 210, 214 (5th Cir.1991) (citation omitted).
Needless to say, we apply Mississippi law in deciding whether the instructions correctly stated the applicable law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Allison v. ITE Imperial Corp., 928 F.2d 137, 138 (5th Cir.1991). And, we review de novo the district court’s interpretation of that law. Salve Regina College v. Russell, — U.S. —, —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). In deciding an unsettled point of state law, Erie requires that we determine how the Mississippi Supreme Court would interpret its own law if presented with the question. American Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir. 1991). When we are required to make an Erie guess, it is not our role to create or modify state law, rather only to predict it. Id.
Under products liability law, recovery by a bystander against a manufacturer for an injury- caused by its product can be an elusive, complex, and difficult concept, especially because of the many terms and defenses and other rules established for Mississippi products liability, and' because of resulting inconsistent, if not conflicting, precedent. Batts asserts that only under the theory of assumption of risk, with its subjective standard, can an open and obvious danger associated with the forklift bar his recovery; that is, the jury would have to find tha,t he knowingly and voluntarily encountered a known risk — the forklift backing up. But, although a subjective standard is used for assumption of risk, an objective standard, which concerns an ordinary user, not the person(s) actually using or injured by the product, is applied for the open and obvious defense to claims under negligence and strict liability in tort. Toney v. Kawasaki Heavy Industries, Ltd., 975 F.2d 162, 168-69 (5th Cir.1992); Gray v. Manitowoc Co., 771 F.2d 866, 871 (5th Cir.1985) (“both the Restatement’s theory of strict liability and Mississippi’s theories of negligence and implied warranty require an objective appraisal of the obviousness of a product’s hazard”); Restatement (Second) of Torts § 402A cmt. i (1965) (the product “must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer ... with the ordinary knowledge common to the community”). This objective standard is all that is in issue here.[7]
As discussed infra, we hold that an open and obvious danger to an ordinary user precludes recovery against the product manufacturer under negligence and strict liability in tort. Accordingly, an open and obvious defect precludes Batts’ recovery against Caterpillar (the manufacturer), regardless of whether he knew, or should *1390 have known, of that danger.[8] Therefore, we reject Batts’ contention that a bystander’s awareness of an open and obvious .danger would simply reduce any recovery under Mississippi’s comparative negligence standard.[9] We now address the bases in Mississippi law for this holding.
A.
1.
It is more than well-established that, for strict liability in tort, Mississippi adheres to the Restatement (Second) of Torts § 402A.[10] E.g., Toney, 975 F.2d at 165; Lloyd v. John Deere Co., 922 F.2d 1192, 1194 (5th Cir.1991); Coca Cola Bottling Co. v. Reeves, 486 So.2d 374, 377-78 (Miss. 1986) (en banc). Moreover, Mississippi law interprets § 402A to permit recovery by a “bystander”. Hall v. Mississippi Chem. Express, Inc., 528 So.2d 796, 799 (Miss. 1988) (“Though a bystander, [plaintiff] is ... eligible under” § 402A.); Reeves, 486 So.2d at 378 (“fact that [plaintiff] may arguably be classified as a bystander” is not bar to § 402A action).
In Reeves, a bottle fell through a carton being removed from a shelf by someone in the vicinity of the plaintiff, who was injured when the bottle shattered upon hitting the floor. A threshold issue was whether the plaintiff, neither a purchaser nor other form of user, could recover under strict liability in tort. The Mississippi Su-premé Court held that he could, noting:
... the duty imposed by Restatement § 402A to the extent that same has been incorporated into the positive law of this state exists in favor of anyone who may reasonably be expected to be in the vicinity of the product’s probable use and to be endangered by it if it is defective. Therefore, the fact that [plaintiff] may arguably be classified as a bystander avails [defendant bottler] nothing inasmuch as children accompanying their parents, relatives or persons in loco par-entis while shopping or otherwise on the premises may generally be expected to be in the vicinity of the handling of soft drink cartons and to be endangered if those cartons are defective.
486 So.2d at 378 (citations omitted).[11] In so holding, the court noted:
*1391 The justness of allowing bystanders to recover on a strict products liability theory is demonstrably greater than is the case with almost any other potential plaintiff, for the bystander is less able to avoid the accident than almost any other.
Id. at 378 n. 2. The open and obvious bar was not in issue in Reeves. But, in any event, this footnote is indicative of the competing interests in products liability law that clouds the issue in Batts’ case.
The forklift was for indoor use. For that and other reasons, Batts could arguably “reasonably be expected to be in the vicinity of the [forklift’s] probable use and to be endangered by it if it is defective.” Id. at 378. Several of the instructions included “bystanders” among those to be considered; and much of the language used was similar to that in Reeves. The jury was instructed that Batts was a bystander (Caterpillar does not contest that here) and could “recover for injuriesf,] consistent with all of the instructions”. The court instructed the jury:
Manufacturers of products have a legal duty to design products that are not in a defective condition unreasonably dangerous to users, consumers, or bystanders. This duty includes the obligation to. install safety and warning devices which will prevent accidents or injuries which are reasonably foreseeable from occurring.
(Emphasis added.)[12]
For the strict liability in tort claim, the district judge, as requested by Caterpillar, charged that an open and obvious danger cannot render the product unreasonably dangerous. Over Batts’ objections, the district judge instructed, in part, that
the plaintiff has alleged that the absence of a back-up alarm, flashing warning lights, and/or rearview mirrors on the forklift ... entitles him to recover against the defendant on the theory of strict products liability____ [I]n order for the plaintiff to prevail on this theory he must prove by a preponderance of the evidence that the forklift ... was in a defective condition when it was sold in 1965 and unreasonably dangerous to the user of the forklift and that the defective condition, if any, was a proximate cause of the ... accident......
... [T]o find the forklift ... to be in a defective condition means that you find that there was something wrong with the [forklift]. To find that the forklift was unreasonably dangerous means that the forklift posed some danger beyond the contemplation of the ordinary user of the forklift.

... [A]ny alleged danger which is open and obvious cannot be considered to be unreasonably dangerous.

(Emphasis added.) After giving the strict liability instruction, the district judge later reemphasized — without specifying under which theory of recovery — the preclusion to recovery if the following danger was open and obvious:
If you find ... that the operation of the forklift ... without the driver facing in the direction of travel and without sounding the manual horn to warn a pedestrian presents an open and obvious danger,regardless of whether the forklift was equipped with [a mirror or warning de *1392 vice], then ... it is your sworn duty to return a verdict for the defendant.
Finally, a special interrogatory asked correctly- whether, on the date of the accident, “the defect, if any, was open and obvious to a reasonable and prudent user----” (Emphasis added.)[13] The jury was instructed properly that if it so found, it was to find for Caterpillar. Concerning the challenged instructions that incorporated open and obvious danger elements, as well as the corresponding special interrogatory, the charge, as a whole, was correct; we are not left “with substantial and ineradicable doubt whether the jury [was] properly guided in its deliberations.” Hall, 937 F.2d at 214.
2.
Batts admits that “the patent danger doctrine ... has been embraced-by Mississippi jurisprudence in the past”, but contends that .the Mississippi Supreme Court has now “laid to rest” the notion that an open and obvious danger exonerates the product manufacturer from strict liability in tort. Along that line, the Mississippi Supreme Court has adhered to a “consumer expectation” test. In Ford Motor Co. v. Matthews, 291 So.2d 169, 172 (Miss.1974), it stated that liability lies under § 402A “ ‘only when the product is, at the time it leaves the seller’s hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.’ ” (Quoting Restatement (Second) of Torts § 402A cmt. g (1965)). As a gloss on the terms “unreasonably dangerous”, it quoted comment i, stating: “ ‘The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.’ ” Id. (quoting Restatement (Second) of- Torts § 402A cmt. i (1965)). As discussed infra, the Mississippi Supreme Court has continued to use this approach. E.g., Toliver v. General Motors Corp., 482 So.2d 213, 218 (Miss.1985) (citing § 402A cmt. g and Ford Motor, 291 So.2d at 169).
Accordingly, based on Mississippi’s choice to define “unreasonably dangerous” by reference to a reasonable, or ordinary, consumer’s expectations of product performance, our court has - held, as discussed infra, that there is no strict liability in tort under Mississippi law for a patent — open and obvious — danger. “[A] product that has an open and obvious danger is not more dangerous than contemplated by the consumer, and hence cannot, under the consumer expectations test applied in Mississippi, be unreasonably dangerous.” Melton v. Deere & Co., 887 F.2d 1241, 1243 (5th Cir.1989). (As quoted above, Batts’ jury was so instructed.) See also Gray, 771 F.2d at 869 (“the consumer expectation test of section 402A ... requires that harm and liability flow from a product characteristic that frustrates consumer expectations”; “the patent danger bar adopted by the Restatement was incorporated into Mississippi’s doctrine of strict liability”). This rule is discussed fully in this court’s recent decision in Toney, 975 F.2d at 165-66 (motorcycle owner injured in collision; claimed motorcycle should have had leg guards).
Batts concedes that decisions by our court support Caterpillar’s contention that the consumer expectation test applies, as opposed to a risk utility analysis.[14] He asserts, however, that our interpretation is *1393 at odds with the position taken by the Mississippi Supreme Court in two decisions in 1988, Whittley v. City of Meridian, 530 So.2d 1341 (Miss.1988) and Hall v. Mississippi Chemical Express, Inc., 528 So.2d 796 (Miss.1988), as well as in Toliver, rendered in 1986.
First, these cases do not persuade us that Mississippi has fundamentally shifted its test from one of consumer expectation to risk utility. Second, even if we agreed with Batts, we would be bound by the interpretation given by a prior panel of this court in Melton (which rejected a similar contention, 887 F.2d at 1243) and Toney.[15] No Mississippi case has appeared since Melton was rendered in 1989 to indicate that its analysis of Mississippi law was incorrect.[16]
3.
As noted, there is no contention that Batts was a “user”. At trial, Caterpillar repeatedly stated that the owner was the “user”; there is no charge that Batts, in performing his duties with the tugger, or otherwise, was working in conjunction with the forklift, so as to make him a “user” of it; and, in fact, the district court instructed that Batts was a “bystander”. As discussed earlier, Batts status as a “bystander” does not prevent him from asserting a § 402A claim that the forklift was defective and unreasonably dangerous. Among other things, he had to prove that (1) he could “reasonably be expected to be in the vicinity of the [forklift’s] probable use and to be endangered by it if it is defective”, Reeves, 486 So.2d at 378; and (2) “the [forklift] was defective and ... its defective condition made the [forklift] unreasonably dangerous to him”, Toliver, 482 So.2d at 216 (emphasis in original). As discussed and quoted supra, in proving that a product was “defective and unreasonably dangerous”, Mississippi applies the consumer expectation test — the product is (1) “defective” when, at the time it leaves the seller’s hands, it is in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him; and (2) “unreasonably dangerous” when it is dangerous to an extent beyond that which will be contemplated by the ordinary consumer, with the ordinary knowledge common to the community as to its characteristics.
Simply put, products liability, whether under negligence or strict liability in tort, does not focus on the status of the plaintiff; instead, it focuses on the product. The focus is not on whether the injured party is a consumer, or user, or bystander, or whether the product is unreasonably dangerous to a particular person. E.g., Toney, 975 F.2d at 169; Gray, 771 F.2d at 869 (discussed infra)-, Page v. Barco Hydraulics, 673 F.2d 134, 138 (5th Cir.1982).[17] Moreover, as discussed, the inquiry for strict liability is not whether the product was dangerous; it is whether it was both defective and unreasonably dangerous. For example, an ordinary kitchen knife is dangerous, simply because of its blade; but, it is not unreasonably dangerous, because the ordinary consumer understands that the blade, due to its sharpness or point, can cause injury. In products liability cases, by which we impose liability on a manufacturer, among others, it is the product — the item placed in commerce for use or consumption — on which liability turns.
Accordingly, even when the bystander is the injured party, the test must remain the same — the product is defective *1394 if, when it leaves the seller’s hands, it is in a condition not contemplated by the ordinary consumer, which will be unreasonably dangerous to him; and, it is unreasonably dangerous if it is dangerous to an extent beyond that which will be contemplated by the ordinary consumer, with the ordinary knowledge common to the community as to its characteristics. This is essentially how the district court instructed the jury.
Our decision in Gray, followed in Melton and Toney, controls on an open and obvious danger precluding strict liability in tort recovery by a bystander against a manufacturer. (All three cases concerned injured users, not injured bystanders.) While Gray was changing sections of a crane boom, the crane operator swung the boom, striking Gray.[18] 771 F.2d at 867. He sued under strict liability in tort, implied warranty, and negligence, contending, inter alia, that there was a design defect in the crane, because the operator’s vision was obscured to the left side, and that the crane should have provided mirrors or other devices to compensate.
The defendant manufacturer contended that the hazard was “open and obvious to ordinary users of the crane” and constituted a bar under any theory of products liability. Id. at 868. (Gray’s holding for negligence is discussed in part II.B.) As for strict liability in tort, our court felt “bound to apply” the consumer expectation test, and stated: “the consumer expectation test of section 402A is rooted in the warranty. remedies of contract law, and requires that harm and liability flow from a product characteristic that frustrates consumer expectations.” Id. at 869 (emphasis added).
Gray was rendered six months before the Mississippi Supreme Court expressly held in Reeves what earlier Mississippi cases had implied — that a bystander could recover under § 402A. Gray does not make a distinction between “users” and “bystanders”; the latter is not mentioned. It is true, as noted in the dissent, that a bystander’s expectations, if any, about a product would not necessarily include knowledge of a danger that is open and obvious to an ordinary consumer; but, again, the test under Mississippi law for whether a product is defective and unreasonably dangerous does not focus on the actual user or the actual bystander (the persons actually using or injured by the product) but, instead, focuses on the ordinary consumer with ordinary knowledge common to the community as to its characteristics. For this reason, Gray held that “the Grays’ right to recover under the theory of strict liability depends upon whether the evidence was sufficient to permit the jury to find that the ... crane was ‘dangerous to an extent not contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.’ ” Id. at 870 (emphasis added). Again, this rule is solidified in Toney.[19]
As noted, in the challenged strict liability instructions, the district court instructed that “any alleged danger which is open and obvious cannot be considered to be unreasonably dangerous” and that the jury was to return a verdict for Caterpillar if it found “that the operation of the forklift ... without the driver [user] facing in the direction of travel and without sounding the manual horn to warn a pedestrian presents an open and obvious danger, regardless of whether the forklift was equipped with [a mirror or warning device]____” In addition, as also noted, in a special interrogatory, the jury was instructed that if it found “[t]hat the defect, if any, was open and obvious to a reasonable and prudent user on” the date of the accident, then it must return a verdict for Caterpillar. This was a correct statement of the law, even for a bystander plaintiff.
B.
For the negligence claim, as discussed, whether the danger is open and *1395 obvious is also measured by an objective— reasonable person — standard, e.g., Toney, 975 F.2d at 168-69; Gray, 771 F.2d at 871. In instructing the jury, over Batts’ objections, on that claim, the district judge stated:
... [T]he duty of a manufacturer is to provide a product which is reasonably fit. There is no duty to provide a perfectly safe product. [Batts] alleges negligence in the design of the forklift ... involved in the accident____ In order for [him] to recover under this theory, ... the burden of proof is upon [him] to prove ... that the absence of [a mirror or warning device] constituted a concealed or hidden dangerous condition, thereby making the forklift defective and unreasonably dangerous. If you find ... that the alleged danger of the forklift ... was open and obvious, and that the forklift functioned properly for its intended use, then ... you must return a verdict for the defendant as to [Batts’] claim of negligent design.
As quoted earlier, the district court also gave a general instruction that the jury had to find for Caterpillar if it found that a driver operating the forklift without facing in the direction of travel and without sounding his horn presented an open and obvious danger. And, it gave the special interrogatory on open and obvious danger.
1.
The district court’s instruction is consistent with Toney and Gray,[20] And, Gray relied on decisions by the Mississippi Supreme Court in Harrist v. Spencer-Harris Tool Co., 244 Miss. 84, 140 So.2d 558 (1962) and Jones y. Babst, 323 So.2d 757 (Miss. 1975). As in Gray, those Mississippi cases concerned injured users, not injured bystanders.[21] Gray held that
a manufacturer’s liability for product defects under Mississippi’s doctrines of negligence and implied warranty may not, as a matter of law, be premised on the existence of an obvious hazard in a product which functions properly for its intended .purpose.
Gray, 771 F.2d at 868.[22] Toney repeats this rule. 975 F.2d at 169. We are not *1396 cited to, nor have we found, a Mississippi case holding that an open and obvious danger, without more, can bar recovery for a products liability negligence claim by a bystander. But, as discussed supra, the focus in products liability is on the product. Moreover, for negligence, and as the Batts’ jury was instructed, the manufacturer’s duty is to produce a reasonably safe product. Therefore, Gray controls.
2.
Batts contends, however, that recent premises liability decisions by the Mississippi Supreme Court control. Liability for negligently designed products is, of course, merely one form of common law negligence, to which the ordinary rules of negligence apply. E.g., Toliver, 482 So.2d at 219 (“[SJtrict liability ‘does not preclude liability based upon the alternative ground of negligence ...’____ Under this theory, the usual defenses to a charge of negligence would apply.” (citations omitted)). And, in some types of negligence cases in Mississippi involving open and obvious dangers, the jury may find for the plaintiff, and then apply comparative negligence. E.g., Goodwin v. Derryberry Co., 553 So.2d 40, 43 (Miss.1989). In Goodwin, a premises liability case, the Mississippi Supreme Court cited its earlier premises liability decision in Bell v. City of Bay St. Louis, 467 So.2d 657, 664 (Miss.1985), which, stated:
In prior cases involving hazards that were extremely “open and obvious”, this Court has not barred injured parties from recovery, but rather has left the issue to thé jury properly instructed regarding comparative negligence____
We have repeatedly condemned jury instructions which, if followed by the jury, would completely deny a negligent plaintiff recovery, even though the defendant may also be negligent.
See also Caruso v. Picayune Pizza Hut, 598 So.2d 770 (Miss.1992) (affirming jury verdict against plaintiff who stumbled on mat placed over loose stripping; mat was “open and obvious”, and question went to jury properly instructed on comparative negligence); Biloxi Regional Medical Ctr. v. David, 555 So.2d 53, 56 (Miss.1989) (“ ‘[CJonditions are not either open and obvious or not open and obvious. Common sense and experience negate[ ] an either or categorization of such conditions. Just how open and obvious a condition may have been is a question for the jury in all except the clearest of cases.’ ” (quoting Bell, 467 So.2d at 664)).[23]
Batts contends that these cases control; but they concern premises, not products, liability. We do not find them persuasive in making our Erie guess on this issue. This is aptly demonstrated by a simple, but conclusive, analogy in Bell. In rejecting the claim that recovery in a premises liability action was barred if the danger was open and obvious, the Mississippi Supreme Court noted: “We might as well exonerate as a matter of law a defendant who leaves his car parked in the middle of the street on grounds that the car was open and obvious.” 467 So.2d at 664. In this example, it was not a defect in the product (automobile) that caused the injury; it was the negligence of its owner, who left it in the middle of the street. The same is true for this products liability negligence claim. The forklift was operated in reverse and struck Batts, a bystander. The jury found that a product defect did not cause the injury.
Consistent with our Erie holding for a strict liability in tort claim, an open and obvious danger in a product bars recovery on a products liability negligence claim by an injured bystander against the product’s manufacturer. Indeed, as discussed, there *1397 is a whole body of products liability law dating from Harrist that effectively absolves a manufacturer from liability resulting from open and obvious product defects. Therefore, the district court correctly instructed the jury that, if it found “that the alleged danger of the forklift ... was open and obvious”, it must return a verdict for Caterpillar on the negligent design claim.
III.
For the foregoing reasons, we
AFFIRM.

. A tugger is motorized; and the operator walks behind and guides it.

. Flavorite purchased the forklift from a third party in 1980.

. Prior to trial, a breach of warranty claim was dismissed as time-barred and is not in issue on appeal.

. Batts contends that several instructions and a special interrogatory improperly commented on the evidence. (We reject Caterpillar’s contention that Batts did not preserve these objections.) The items so challenged were consistent with the evidence .and- the various claims and theories in issue. Contrary to Batts’ contention, they were not peremptory; and, taken as a whole, the charge was proper, as discussed infra.

. Caterpillar contends on two bases that the district court erred in denying it summary judgment or a directed verdict. First, it relies on the theory of superseding proximate cause. The jury was instructed on that defense and given a special interrogatory. The leadperson in the blending department and a co-employee who .sometimes operated the tugger testified that no back-up alarms were in place. On the other hand, the plant engineer testified that a back-up alarm bell was installed on the Towmotor forklift in 1980 or 1981. But, he had no knowledge that the alarm was functional on the day of the accident, or even six months or a year prior to it. And, the mechanic in charge of maintaining Flavorite’s forklifts testified that the forklift Johnson was driving had a back-up bell; that it was Flavorite’s practice to check the alarm bells every 30 days; that replacement bells were needed for the forklift one or two times, a year, because they would get knocked off or operators would tamper with them; that he examined the forklift on the day after the accident; and that the back-up bell was working at that time. Accordingly, Caterpillar asserts the proof showed that several years before the accident, it equipped the forklift with a back-up warning *1389 device; it was in place within a month before the accident; and, if it was not operable at the time of the accident, that fact — including its removal or destruction — cannot be charged to Caterpillar.
Second, Caterpillar contends that reasonable minds could not differ regarding warning devices not being needed on the forklift, as demonstrated by the proof that the forklift complied with all industrial standards and consumer expectations. (As discussed infra, “consumer expectations” is a critical issue in a Mississippi strict liability in tort action.)
Caterpillar did not cross-appeal from these rulings. Assuming that we can reach these issues, they were for the jury; the district court did not err in denying the motions.

; Batts maintained that assumption of risk had no application to this case. .That bar is not in issue.

. In issue is only recovery by an injured bystander against a product manufacturer where the open and obvious bar is raised. Therefore, we are not concerned with, nor do we discuss, other defenses or claims that might be raised. For example, contrary to the position taken by the able dissent, although an open and obvious danger bars recovery against the product manufacturer by an injured bystander, he or she still has a claim against the product user, unless, as here (workers’ compensation bar), that avenue of recovery is foreclosed. (In this case, liability is shifted not to Batts, but to the user, and hence, workers’ compensation.) And, of course, for such a claim, assumption of risk, or contributory negligence by the injured bystander could be asserted. But, again, we are not concerned in this appeal with the seemingly limitless array of claims, defenses, bars, and other theories inherent in products liability actions.

. The Mississippi comparative negligence statute provides in relevant part:
In all actions hereafter brought for personal injuries, ... the fact that the person injured ... may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured.... Miss.Code Ann. § 11-7-15. The jury was instructed on comparative negligence, as part of the standard charge. See note 8.

. That section provides in part:
§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
Restatement (Second) of Torts § 402A (1965).

. Likewise, in an "Erie guess” shortly before Reeves, our en banc court reinstated the panel’s vacated holding that, under Mississippi law, a manufacturer can owe bystanders a strict liability “duty” that "grows out of the contemplated or normally intended use of its defective product and extends at least to those persons within the area of that use who can reasonably be foreseen to be endangered." Jackson v. JohnsManville Sales Corp., 727 F.2d 506, 514 (5th Cir.1984), reinstated in relevant part on reh’g, *1391 750 F.2d 1314, 1317 (5th Cir.1985) (en banc), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

. In fact, one of the instructions given for Batts, over Caterpillar’s objection, erroneously conflated "ordinary consumer” and "ordinary bystander”:
If you find ... that the forklift was in a defective condition, unreasonably dangerous when sold by [Caterpillar] ... because it failed to have mirrors, audible back-up alarms, and/or flashing warning lights, and that the danger from the forklift in its defective condition, unreasonably dangerous, was not reasonably foreseeable by the ordinary consumer or bystander with the ordinary knowledge common to the community as to the characteristics in common usage of forklift products ... and that Myron Batts was injured while the forklift was being used in a manner which was reasonably foreseeable by [Caterpillar], and that the lack of mirrors, audible back-up alarms, and/or flashing warning lights was the sole proximate cause or a proximate contributing- cause of Myron Batts’s injuries, then, in that event your verdict should be for [Myron Batts].
In any event, taken as a whole, the charge does not constitute reversible error.

. This was the third interrogatory; the first two, which the jury answered in the negative, asked whether "Caterpillar was negligent in its design of the forklift" and whether “the forklift as manufactured and sold by Caterpillar was defective and unreasonably dangerous at the time of the sale and delivery". The jury was instructed to stop if it answered “no” to these two.- Accordingly, it did not reach the open and obvious danger interrogatory.

. For example, the Supreme Courts of New Jersey and Texas have applied the latter. See, e.g., Ryan v. KDI Sylvan Pools, Inc., 121 N.J. 276, 290, 579 A.2d 1241, 1248 (1990); Turner v. General Motors Corp., 584 S.W.2d 844, 851 (Tex. 1979). Under the risk-utility approach, "a product can be said to be defective in the kind of way that makes it 'unreasonably dangerous’ if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product.” W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 99, at 699 (5th ed. 1984).

. " ‘In this circuit one "panel may not overrule the decision, right or wrong, of a prior panel” in the absence of en banc reconsideration or superseding decision of the Supreme Court.’ ” Burlington N. R.R. v. Brotherhood of Maintenance of Way Employees, 961 F.2d 86, 89 (5th Cir.1992) (citations omitted).

. Batts also requests, in the alternative, that we certify this question to the Mississippi Supreme Court. Our law is clear; the Mississippi law upon which our precedent is based is unchanged. We thus decline to do so.

. This court stated in Page:
... [I]n strict liability the focus is on the safety of the product itself. The question is whether the product meets the reasonable expectations of the ordinary consumer as to its safety, irrespective of all the care that the manufacturer might have put into making it.
673 F.2d at 138 (citations omitted).

. Because Gray was working with, or on, the boom, we consider him a user, not a bystander.

. The dissent posits that we fail to explain why the consumer expectation test applies to bystanders. In short, as discussed above, Mississippi law and our circuit precedent require it. The same is true for our holding on the negligence claim.

. Indeed, at the charge conference, the district judge placed considerable reliance on Gray.

. In Harrist, decided before the adoption of strict liability in tort in Mississippi, the plaintiff/"employee-user" alleged negligence in the design of steps aboard an oil rig. 140 So.2d at 559. He requested that the court abolish the privity of contract rule for products cases grounded in negligence and implied warranty. Id., 140 So.2d at 561. The court found it unnecessary to do so because, assuming it would, it
would be required to affirm the trial court because the alleged defects are not considered to be latent or concealed. If we assume there were defects, we think they were apparent and obvious to a casual observer.
Id. (emphasis added). Despite the opportunity presented for the court to hold that the obviousness of the danger was a comparative negligence factor, it held instead that the defendant’s negligence vel non in designing the steps was not even a jury question.
In Jones, the court quoted with approval this court’s opinion in Ward v. Hobart Manufacturing Co., 450 F.2d 1176, 1180 (5th Cir.1971), stating that Ward
set out the general rule for negligent design cases followed by this Court; "[Wjhere the alleged danger is open and obvious and the manufacturer has done everything necessary to insure that the machine will function properly for its designed purpose any duty owed to a future user has been fulfilled.”
323 So.2d at 759 (emphasis added). The court affirmed a directed verdict for the manufacturer on strict liability and negligence claims, because there was no evidence supporting those theories; it found the evidence instead supported a hypothesis that the subject accident resulted from improperly attaching lug nuts in repairing an automobile tire. Accordingly, a jury verdict against the defendants involved in the repair was affirmed.
In applying Mississippi law, we, of course, are controlled by decisions by the Mississippi Supreme Court; but, it does appear that Jones overstates the holding in Ward, a pure negligent design case brought by a plaintiff injured while cleaning a meat grinder. 450 F.2d at 1178, 1180. Gray, however, ruled that the Mississippi Supreme Court would follow Jones. 771 F.2d at 868 n. 1.

. Toney and Gray are this court’s latest pronouncements on the open and obvious defense in a Mississippi negligent design case. Melton concerned only strict liability in tort, 887 F.2d at 1242; and in Lloyd (1991) (open and obvious danger to injured user; improper design and failure to warn claims; directed verdict granted), "while we ... applied the standard for a directed verdict as to all three theories, or bases, for liability [negligence, warranty, strict liability *1396 in tort], and [found] it correctly granted for each, our analysis [was] couched in the language of § 402A strict liability." 922 F.2d at 1194 n. 2.

. The Mississippi Supreme Court presumably relied on this “clearest of cases” exception when, in McGovern v. Scarborough, 566 So.2d 1225 (Miss. 1990), it affirmed a directed verdict against a plaintiff who stumbled on a raised threshold when entering a business premises. The court expressed concern at the prospect of creating a jury question for “any doorway from the street which is not on the same level as the street.” Id. at 1228.